UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

CASE NO: 2004/61422

MIAMI DOLPHINS, LTD., and
NATIONAL FOOTBALL LEAGUE
MANAGEMENT COUNCIL,

      Petitioners,

vs.

ERRICK L. "RICKY" WILLIAMS and
NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION,

      Respondents.

_____/



### RESPONDENTS' MEMORANDUM OF LAW
### IN OPPOSITION TO PETITIONERS'
### MOTION TO CONFIRM ARBITRATION AWARD

### PRELIMINARY STATEMENT

      In their brief in support of their motion to confirm the Arbitration Award, the Miami Dolphins, Ltd. ("Dolphins") and the National Football League Management Council ("NFLMC") either concede or do not dispute the basic points that lead to the conclusion that this is one of those rare cases where an arbitration award must be set aside.

      First, the Dolphins and the NFLMC concede that an arbitration award should be set aside where the arbitrator manifestly disregards the law, where enforcement of the award would violate public policy, or where the award is arbitrary and capricious. Motion of Petitioners Miami Dolphins and National Football League Management Council for Confirmation of Arbitration Award, and Supporting Memorandum of Law, dated December 17, 2004 ("PB") at 13-15.

**NON-COMPLIANCE OF S.D. fla. L.R.** 5/A.1
5/A.5
7.1.C.2

Dockets.Justia.com

Second, the Dolphins and the NFLMC concede (as did the Arbitrator) that the unequivocal public policies of the States of Florida and Louisiana prohibit the enforcement of penalty clauses in contracts. Id. at 9; Opinion In the Matter of the Arbitration Between Miami Dolphins and Ricky Williams, dated October 5, 2004 ("Award"), Ex. C at 11.[1]

Third, as to amounts already earned by Mr. Williams during the time he was employed in Louisiana by the New Orleans Saints (much of which the Dolphins seek here), the Dolphins and the NFLMC do not dispute that Louisiana law flatly prohibits the forfeiture of salary that an employee has already earned, even if the employee resigns from his job. LA. REV. STAT. ANN. § 23:634(A) ("No person . . . shall require any of his employees to . . . forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.").

Fourth, the Dolphins and the NFLMC concede (as did the Arbitrator) that Florida and Louisiana law require that a purported liquidated damages provision -- as the Dolphins seek to enforce here -- "must bear some reasonable relationship to the anticipated loss." PB at 13; Award, Ex. C at 10-11.

Fifth, the Dolphins and the NFLMC do not dispute that they urged the Arbitrator to ignore this state law, and took the position that there was no need for the Arbitrator to conduct a factual hearing to determine whether the liquidated damages provisions of the contract that purport to require Mr. Williams to pay the team more than $8.6 million in the event of a breach -- which is far more than the Dolphins have ever paid to Mr. Williams for his services to them as an NFL player -- bear "some reasonable relationship to the anticipated loss" that the Dolphins have purportedly suffered. Hearing Transcript, dated September 21, 2004 ("Hearing Tr."), Ex. E at 33 ("What you do have to resolve in terms of the legal principles is what the CBA has to say about these contract provisions and . . . <u>you don't have to resolve what Florida state law and liquidated</u>

---

[1] References to exhibits are to the exhibits attached to the Memorandum of Law In Support of Respondents' Cross-Motion To Vacate The Arbitration Award, dated December 17, 2004 ("RB").

2

damages in cases that clearly don't apply has to say.") (emphasis added); see also id. at 34-35.

Sixth, the Dolphins and the NFLMC do not dispute that no such factual hearing was conducted by the Arbitrator.

Seventh, the Dolphins and the NFLMC do not dispute that no evidence was presented in the arbitration as to the amount of any damages that the Dolphins actually suffered or anticipated that they would suffer as a result of the claimed breach by Mr. Williams.

Eighth, the Dolphins and the NFLMC do not dispute that no evidence was presented in the arbitration that, when the parties negotiated the forfeiture provisions at issue, they attempted to reasonably estimate the anticipated loss the Dolphins would suffer as a result of a breach, as opposed to agreeing to a penalty provision designed to enforce compliance with the contract through in terrorem means. Indeed, the Dolphins and the NFLMC conceded that the Dolphins and Mr. Williams did not make any such estimate.

Finally, the Dolphins and the NFLMC do not dispute that the Arbitrator based his Award on the simple premise that the forfeiture provisions should be enforceable because they were agreed to. Award, Ex. C at 11 (the forfeiture provisions "were the essence of the bargain themselves"). This circular logic manifestly disregarded -- and would wholly undermine -- the recognized public policies of the States of Florida and Louisiana that prohibit enforcement of contractual penalties regardless of what the parties have agreed to in their contract.

In short, the undisputed facts establish that, in rendering his Award, the Arbitrator knew what state law required, but ignored it. No arbitrator is permitted to enforce a forfeiture provision triggered by a breach unless he first conducts a factual hearing to determine whether the amount stipulated bears "some reasonable relationship to the anticipated loss" for the breach, and whether the provision in fact reasonably estimated such damages. Despite these requirements, the Arbitrator chose to disregard them and enforce a liquidated damages provision without even conducting the necessary inquiry, which would have determined that the amount stipulated was an unenforceable penalty. Indeed, the Arbitrator recognized the punitive nature of the forfeiture, finding

that it was designed to "ensure" Mr. Williams' continued performance under the contract, not compensate the team for a breach. Award, Ex. C at 12. The arbitration award thus must be set aside because it manifestly disregards the law and violates the public policies of the States of Florida and Louisiana. NFL teams, like all other contracting parties, must comply with state law.[2]

## ARGUMENT

I. **The Arbitration Award Manifestly Disregards The Law And Violates The Clear Public Policies Of Florida And Louisiana**

There is no dispute that a court must vacate an arbitration award when it manifestly disregards applicable state law or violates public policy. See PB at 13-15; see also, e.g., Montes v. Shearson Lehman Bros., Inc., 128 F.3d 1456, 1461-62 (11th Cir. 1997) (vacating award where arbitrator was urged to disregard applicable law and where record indicated he did so); National Football League Players Ass'n v. Pro-Football, 857 F. Supp. 71, 80 (D.D.C. 1994), vacated as moot, 56 F.3d 1525 (D.C. Cir. 1995), rev'd, 79 F.3d 1215 (D.C. Cir. 1996) (vacating labor arbitration award that ordered NFL team to take action that would violate public policy of the Commonwealth of Virginia).

In fact, the Dolphins and the NFLMC acknowledge that grounds for vacating an arbitration award include: (1) where the arbitrator was "conscious of the law and deliberately ignore[d] it"; (2) where the enforcement of the arbitration award "would violate some explicit public policy that is well[-]defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests"; and (3) where "no ground for the

---

[2] Both the New Orleans Contract and the Dolphins Contract, like every other Player Contract in the NFL, contain choice of law provisions selecting the state law to apply. See New Orleans Contract, Ex. B ¶ 22; Dolphins Contract, Ex. D ¶ 22. State law may not alter the substantive terms of a CBA to reduce benefits provided to employees since doing so interferes with the collective bargaining process. See, e.g., Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wis. Employment Relations Comm'n, 427 U.S. 132 (1976). However, it is well-settled that state law is not pre-empted by federal labor law when there is no conflict with the collective bargaining process or the terms of a collective bargaining agreement. See, e.g., Caterpillar Inc. v. Williams, 482 U.S. 386, 394-97 (1987) (employees' suit under individual employment contracts asserting state rights and not requiring interpretation of the collective bargaining agreement not governed by federal law). Here, there is no conflict between any section of the NFL CBA and state law applicable to the enforcement of liquidated damages clauses in contracts.

4

[arbitration award] can be inferred from the facts." PB at 13-15. Thus, the only issue in this case is whether the arbitration award at issue ignores the recognized laws or violates the public policy of the States of Louisiana or Florida. The record is clear that it does.

Specifically, the award manifestly disregards well-established Florida and Louisiana state laws that prohibit the enforcement of penalty clauses in a contract. Both Florida and Louisiana law are clear on this point: contract provisions designed to compel performance under a contract by penalizing a party for failing to perform may not be enforced, regardless of what terms have been agreed to in the contract. See, e.g., Coleman v. B.R. Chamberlain & Sons, Inc., 766 So. 2d 427, 429-30 (Fla. 5th DCA 2000) ("Florida courts will not enforce a penalty which is 'disproportionate to the damages' and 'is agreed upon in order to enforce performance' of a contract and 'held *in terrorem* over the promisor to deter him from breaking his promise.'") (citations omitted); Mobley v. Mobley, 852 So. 2d 1136, 1139 (La. Ct. App. 2003) ("[S]tipulated damages should reasonably approximate the damages suffered by the obligee and not be penal."); LA. CIV. CODE ANN. art. 2012 (stipulated damages clauses may not be enforced when "they are so manifestly unreasonable as to be contrary to public policy"). In fact, the Dolphins and the NFLMC acknowledge both that this is the law of Florida and Louisiana (PB at 9, 13, 14), and that the Arbitrator was aware of this state law in rendering his decision (id. at 9, 13). They could not do otherwise. Arbitrator Bloch expressly acknowledged this law in his opinion: "The various state law cases do reflect the commonly-accepted principle that <u>a liquidated contract provision must bear some reasonable relationship to the anticipated loss</u>." Award, Ex. C at 10-11 (emphasis added).

The Dolphins and the NFLMC recognize that the applicable laws of Florida and Louisiana require that the court or other decisionmaker make factual findings, based on evidence, as to whether the parties attempted to approximate the anticipated loss that would be caused by the breach. See PB at 13-14; Carney v. Boles, 643 So. 2d 339, 343 (La. Ct. App. 1994) ("The court must determine the reasonableness of the amount of stipulated damages <u>by inquiring whether the parties attempted to approximate actual damages in confecting the stipulated damages provision of the agreement</u>.") (emphasis added); Stenor, Inc. v. Lester, 58 So. 2d 673, 675 (Fla. 1951) (critical factor for determining enforceability is whether the specified sum is reasonable

compensation for damage caused by the breach). Both jurisdictions specifically require that courts or arbitrators perform a factual analysis of whether the liquidated damage amounts were a reasonable approximation of the actual damages incurred as result of the breach. See, e.g., Lefemine v. Baron, 573 So. 2d 326, 328 (Fla. 1991) (determination must be made that liquidated damages clause is designed to approximate a reasonable estimate of the actual amount of the damages incurred rather than designed to induce performance through a penalty); Mobley, 852 So. 2d at 1139 (an inquiry must be made into the "reasonableness of the amount of stipulated damages by inquiring whether the parties attempted to approximate actual damages"). Such an inquiry requires the taking of evidence to determine the relevant facts. See, e.g., Secrist v. Nat'l Serv. Indus., Inc., 395 So. 2d 1280, 1283 (Fla. 2d DCA 1981) (liquidated damages provision not enforced where non-breaching party failed to present any evidence of actual damages); Keiser v. Catholic Diocese of Shreveport, Inc., 880 So. 2d 230, 236 (La. Ct. App. 2004) (stipulated damages provision unenforceable where record is devoid of any evidence regarding damages actually suffered).

Moreover, as to the signing bonus portion of his salary that Mr. Williams was paid by the New Orleans Saints in Louisiana, much of which the Dolphins seek here, Louisiana law (which governs the Saints contract assumed by the Dolphins) expressly provides that an employee who leaves his job may not forfeit any salary he has already earned. LA. REV. STAT. ANN. § 23:634(A) ("No person . . . shall require any of his employees to . . . forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.").

As shown in Respondents' memorandum in support of their motion to vacate, the Award here fails to meet any of these state law requirements. See RB at 9-12. Both before and at the arbitration hearing, the NFLPA and Mr. Williams requested Arbitrator Bloch to apply governing state law, and to refuse to enforce the clear penalty clauses at issue here. The Dolphins and the NFLMC, by contrast, urged Arbitrator Bloch to ignore controlling liquidated damages principles. See Hearing Tr., Ex. E at 33 ("What you do have to resolve in terms of the legal principles is what the CBA has to say about

6

these contract provisions and . . . <u>you don't have to resolve what Florida state law and liquidated damages in cases that clearly don't apply has to say</u>.") (emphasis added); see also id. at 34-35. The NFLPA also argued that, before any liquidated damages provision could be upheld, a factual hearing would have to be conducted to determine whether the provision was intended to reasonably estimate the Dolphins' damages in the event of a breach -- as opposed to simply trying to induce performance through a penalty. See id. at 81-83, 124. No such hearing was ever held.

        Instead, in issuing his award, Arbitrator Bloch chose to ignore the applicable state law prohibiting contractual penalties and requiring factual findings as to whether the amount forfeited was a reasonable approximation of the damages anticipated to be suffered. He determined to uphold the forfeiture provision simply because it was the agreement of the parties and not specifically precluded by any term of the collective bargaining agreement between the National Football League and the NFLPA. Award, Ex. C at 11 ("Reading the contract as a whole, there is no real question that what was bargained here was a comprehensive incentive and default mechanism. . . . . [T]hey were the essence of the bargain themselves."). Further, he made the ipse dixit assertion, without <u>any</u> evidence in the record on the point, that "[e]ven were one to embrace a liquidated damage approach, it is not at all clear the stakes would be considered disproportionate" in requiring Mr. Williams to forfeit $8.6 million because the Dolphins had traded three draft picks to obtain the right to Mr. Williams' services from the New Orleans Saints. Id.; see also RB at 16. However, there was <u>no</u> evidence presented to support this factual assertion -- and, the NFLPA and Mr. Williams were not even granted an opportunity to contest the point through the submission of evidence on it.

        The Dolphins and the NFLMC argue that Arbitrator Bloch's conclusory statement as to these draft picks, without any evidence in the record on the point, is sufficient to comply with the Florida and Louisiana law requiring that the amount of the forfeiture not be disproportionate to the damages suffered by the employer. PB at 13 ("[E]ven if [the default and repayment obligations] were [liquidated damages provisions], they were not disproportionate to the harm suffered by the Dolphins, who had traded three draft picks for Williams and made an overall plan for the team in which he played a prominent role."); see also id. at 11 (reviewing statements in Award quoted above).

However, this argument only underscores that the Award must be set aside because the record is clear that <u>no</u> evidence was submitted as to the amount of any damages caused by Mr. Williams' breach, the relationship of such damages to any asserted value of the draft picks traded for Mr. Williams, the value of Mr. Williams' All-Star performance for the Dolphins in the preceding two years, the impact on the Dolphins' fortunes this year of numerous other events on the field (including season ending injuries to key players), and whether the Dolphins suffered <u>any</u> damages at all given their locked-in national television contract, long-term sponsorship deals, or other considerations. Hearing Tr., Ex. E at 124, 127, 129.

At the hearing, the Arbitrator turned the requirements of Florida and Louisiana public policy upside-down, stating that he would receive evidence on these types of issues only if he invalidated the forfeiture provision. <u>Id.</u> at 124 ("What I will say on the subject of damages . . . is that if it comes to a point where, for some reason, the remedy is to set aside these provisions and have the parties have recourse to a standard damage approach, I would certainly keep the record open for that point."). The law is clear, however, that an arbitrator's failure to make required factual findings constitutes a manifest disregard for the law. <u>See</u> <u>Daily News v. Newspaper & Mail Deliverers' Union of New York</u>, No. 99 Civ. 5165, 1999 WL 1095613, at *7-*8 (S.D.N.Y. Dec. 2, 1999) (arbitrator's failure to make required factual findings constitutes grounds for vacating award).

The Arbitrator simply disregarded the law that liquidated damage amounts must be a reasonable approximation of the actual damages incurred as result of the breach. Indeed, at the hearing, the Dolphins and the NFLMC conceded that, in the negotiations between Mr. Williams and the Dolphins, "there was no specific discussions about damages that the Dolphins would suffer from breach." Hearing Tr., Ex. E at 120-21. The stipulated forfeiture amounts in the contract thus could not have been a reasonable damages estimate, as is required by the laws and public policies of both Florida and Louisiana.[3]

---

[3] The penal nature of the provisions at issue is also manifest from the fact that the "default" provisions in the contracts fail to account for <u>any</u> varying degrees of breach in setting the amount of money to be paid by Williams. For example, the same salary forfeiture applies under the Dolphins contract regardless of how many games Mr. Williams refuses to play -- one game, or

II. **The Dolphins And The NFLMC Cannot Avoid The Unenforceability Of The Forfeiture Provisions By Asserting That They Are Not Liquidated Damages Provisions**

In their brief submitted in support of confirmation of the Award, the Dolphins and the NFLMC contend that the arbitration award should be confirmed because Arbitrator Bloch determined that "the clauses in these agreements are not liquidated damage provisions; they are, instead[,] terms that highlight, with precision, those circumstances in which bonus monies will be given and those in which they will be taken away." Award, Ex. C at 11 (quoted in PB at 9). However, this statement is just another ipse dixit by the Arbitrator, which cannot change the conclusion that the Award must be set aside because it disregards and violates the laws and clear public policies of Florida and Louisiana.

As shown in our brief submitted in support of the motion to vacate, the contractual default provisions at issue fall squarely within the definition of liquidated damages that are subject to review under Florida and Louisiana law. RB at 12-15. Specifically, these provisions set forth how much money Mr. Williams would have to pay the Dolphins for specified contractual "defaults" and the Dolphins' Grievance is based on the claim that "Williams' failure to report and play under the terms of his Contract with the Dolphins constitutes a <u>clear breach of the express terms of the Contract</u> . . . ." Letter from Dennis Curran to Richard Berthelsen, dated September 1, 2004, Ex. I at 3 (emphasis added). Calling these contractual default provisions by another name -- as conditional payments -- does not change the nature of what they are and immunize them from the state law and strong public policy prohibiting the enforcement of contractual penalty provisions that bear no reasonable relationship to the amount of damages caused by the default. See <u>Georgia Power Co. v. Int'l Bhd. of Elec. Workers, Local 84</u>, 995 F.2d 1030,

---

multiple seasons. See Dolphins Contract, Ex. D at Addendum 1 ¶ 12. "[W]here an agreement is to pay the same sum for a partial as for a total breach or is to secure the performance of covenants of widely varying importance for any of which the sum is excessive, it will be regarded as a penalty." <u>Stenor</u>, 58 So. 2d at 675; <u>Am. Leasing Co. of Monroe, Inc. v. Lannon E. Miller & Son, Gen. Contracting, Inc.</u>, 469 So. 2d 325, 328-29 (La. Ct. App. 1985) (clause requiring full payment of the balance of rent for the whole lease term regardless of when during term the lease was broken did not approximate damages and was contrary to public policy).

1032 (11th Cir. 1993) (arbitrator's denomination of an award as compensatory does not prevent the court from determining that the award is in fact punitive).

It would severely undermine and violate public policy against the enforcement of contractual penalties if one could avoid the laws of Florida and Louisiana simply by re-labeling liquidated damages clauses as payment "conditions." For example, in T.A.S. Heavy Equipment, Inc., the contract at issue contained a provision permitting the plaintiff to terminate the agreement if the excavation contractor was not making adequate progress toward completion, and, upon termination, entitling the contractor to payment for only 75% of the work it had already completed. T.A.S. Heavy Equipment, Inc. v. Delint, Inc., 532 So. 2d 23, 24 (Fla. 4th DCA 1988). The court held that such a clause was an unenforceable penalty, noting that "the language of the termination clause reflects the intent of the parties that a penalty be imposed upon T.A.S. in the event of its breach by not being paid for the full amount of the work actually performed." Id. at 25 (emphasis added); see also Caspert v. Anderson Apartments, Inc., 94 N.Y.S.2d 521, 525 (N.Y. Sup. Ct. 1949) ("Likewise, equity will prevent the enforcement of a forfeiture for nonperformance of conditions subsequent and refuse to give effect to a covenant for liquidated damages if it would be equivalent in substance to a penalty.") (emphasis added).

On this point, Arbitrator Bloch first correctly recognized that "whether a provision is seen as forfeiture, penalty, refund or return, the end result is the same: Net monies are reduced." Award, Ex. C at 11. However, the Arbitrator then ignored and violated the laws and public policies of the States of Florida and Louisiana by determining to uphold the provisions at issue because of his assertion that "[t]hese were not simply surrogate methods of estimating damages in the event the bargain went sour; rather, they were the essence of the bargain themselves." Id. Explaining himself, Arbitrator Bloch stated:

> Failing to honor and enforce the clear terms of this particular arrangement would be to at once ignore both the overlay of the master collective bargaining agreement and the overall structure of this individual Player Contract. In this case, the Miami club had made extensive plans for the Player, attempting to provide both benefits and costs that would ensure a long-term relationship. All this was held for naught when

>Williams walked away. In response, the Club was entitled to reclaim the bonuses.

Id. at 11-12 (footnote omitted; emphasis added).

This explanation demonstrates that Arbitrator Bloch determined that he could disregard the laws and policies of Florida and Louisiana -- which make it clear that a contract cannot be used to penalize a party to induce him through in terrorem means to continue to perform under the contract (i.e., "ensure a long-term relationship"). Arbitrator Bloch believed he could do so because the penalty at issue was the "essence" of the contract and was designed to "ensure a long-term relationship" between the parties. Id. This, however, turns the Florida and Louisiana laws and policies against punitive contract clauses on their head, by enforcing such provisions when they are concededly designed not to reasonably approximate damages, but to induce a party through a large penalty to continue to perform under the contract in a "long-term relationship." Contrary to avoiding the impact of the public policy exception to enforcing arbitration awards, this discussion by Arbitrator Bloch in the Award shows precisely why the Award must be set aside. It is predicated on the principle that penalties designed to ensure continued performance under a contract are enforceable -- a direct attack on the laws and public policies of Florida and Louisiana.

## **CONCLUSION**

For all of the foregoing reasons, and for the reasons set forth in Respondents' motion to vacate, the Award should not be confirmed; it should be vacated. This is one of the rare cases where a labor arbitrator has issued an award that manifestly disregards the governing law and violates public policy.

Dated: January 13, 2005

        Respectfully submitted,

        _/s/ Christopher Pace_
        Edward Soto (FBN 265144)
        Christopher Pace (FBN 721166)
        WEIL, GOTSHAL & MANGES LLP
        1395 Brickell Avenue, Suite 1200
        Miami, Florida 33131
        Telephone: (305) 577-3100
        Facsimile: (305) 374-7159
        Email: christopher.pace@weil.com

        Jeffrey L. Kessler, Esq.
        David G. Feher, Esq.
        Melanie R. Moss, Esq.
        DEWEY BALLANTINE LLP
        1301 Avenue of the Americas
        New York, New York 10019
        (212) 259-8000

        Richard A. Berthelsen, Esq.
        General Counsel
        National Football League Players Association
        2021 L Street, N.W.
        Washington, D.C. 20036
        (202) 463-2000

        Counsel for Williams and
        National Football League Players Association

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of Respondents' Memorandum of Law in Opposition to Petitioners' Motion to Confirm Arbitration Award was served via U.S. Mail on this 13th day of January, 2005 to the individuals listed below.

Stanley H. Wakshlag, Esq.
Christopher S. Carver, Esq.
AKERMAN SENTERFITT
One Southeast Third Avenue, 28th Floor
Miami, Florida 33131

Daniel L. Nash, Esq.
AKIN GUMP STRAUSS HAUER &
FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564

By: _____
Jon Polenberg