UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

CASE No: 04-61422-Civ-Cohn/Snow



| | |
|---|---|
| MIAMI DOLPHINS, LTD. and NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL, | ) ) ) ) |
| Petitioners, | ) ) |
| vs. | ) ) |
| ERRICK L. "RICKY" WILLIAMS and NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, | ) ) ) ) |
| Respondents. | ) ) |

**MEMORANDUM OF LAW OF PETITIONERS MIAMI DOLPHINS AND NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL IN OPPOSITION TO RESPONDENTS' CROSS-MOTION TO VACATE THE ARBITRATION AWARD**

{M2198990;1}



I.  **INTRODUCTION**

In the proceeding below, Arbitrator Richard Bloch was asked to interpret the NFL Player Contract ("Contract") between respondent Errick L. "Ricky" Williams ("Williams") and petitioner Miami Dolphins, Ltd. (the "Dolphins"). The matter was submitted to Arbitrator Bloch in accordance with the grievance and arbitration procedures set forth in the collective bargaining agreement ("CBA") between the NFL Management Council (the "Management Council"), which represents the NFL Member Clubs, and the NFL Players Association (the "NFLPA"), which is the exclusive collective bargaining representative of all NFL players. Under the express terms of the CBA, Arbitrator Bloch is granted exclusive, final, and binding authority to resolve matters of contract interpretation like the one presented here.

The issue of contract interpretation presented to Arbitrator Bloch was whether Williams, who abruptly "retired" last year in the middle of a multi-year contract with the Dolphins, was obligated to return part of a signing bonus and certain incentive compensation that he had been paid in exchange for his explicit promise to play for the entire duration of his contract. As a result of Williams' sudden abandonment of his team, the Dolphins filed a grievance under the CBA, claiming that Williams was not entitled to retain amounts (totaling $8.6 million) because, under the terms of his Contract, he had failed to satisfy the express conditions under which the amounts had been paid.

In defense, Williams could not possibly dispute that he had violated the explicit conditions in his Contract. Instead, he argued to Arbitrator Bloch that the clear provisions in his Contract should not be enforced because they violated Florida and Louisiana state law. Specifically, Williams argued that the conditions in his Contract should be interpreted as calling for "liquidated damages" that were disproportionate to the injury caused by his retirement and that the incentive compensation at issue had already been "earned" under his Contract.

Following the submission of extensive briefs and after conducting a hearing, Arbitrator Bloch issued an Award ("Award") and Opinion ("Opinion") enforcing the Contract and ordering Williams to pay the Dolphins $8.6 million. In doing so, Arbitrator Bloch carefully considered and specifically rejected Williams' defenses. Thus, Arbitrator Bloch applied fundamental

{M2198990;1}

principles of contract law, as well as well-established arbitration precedent in the industry, and determined that the Contract provisions at issue cannot be interpreted as "liquidated damages penalties." Instead, he construed the Contract and determined that Williams had simply failed to satisfy the conditions under which the payments had been made in the first place.

Now, after failing to comply with Arbitrator Bloch's Award, Williams has filed a Motion to Vacate. Although it tosses about terms like "manifest disregard" and "public policy," the Motion to Vacate does nothing more than rehash the same arguments Williams made to Arbitrator Bloch. However, under well-established principles governing the finality of labor arbitration, the Court may not vacate an arbitration award simply because it might interpret a contract, facts, or law differently. Even if this Court believes Arbitrator Bloch's interpretations of the Contract or law are erroneous, it cannot vacate the Award unless Williams can show that Arbitrator Bloch: (1) manifestly disregard the law by recognizing controlling law and then consciously disregarding it; or (2) issued an Award in violation of public policy by requiring Williams to engage in some action that would violate the law or public policy. Arbitrator Bloch did neither. Arbitrator Bloch reviewed the Contract and applicable law, interpreted and applied them as he saw fit, acted within the scope of his authority, and issued an order that prevents Williams from keeping the Dolphins' money without holding up his end of the bargain. Williams may believe Arbitrator Bloch misapplied Florida and Louisiana liquidated damages law, but the alleged errors do not come close to satisfying the requirements for vacating an arbitration award. Accordingly, Williams' Motion to Vacate must be denied, and the Dolphins Motion for Confirmation must be granted.

## II.   THE COURT SHOULD DENY THE MOTION TO VACATE.

Fundamentally missing from Williams' Motion to Vacate is any discussion of the standard of review this Court must apply to the Award and Opinion. As more fully set out in the Dolphins' and Management Council's Motion for Confirmation, federal labor law requires courts to apply a highly deferential standard of review to arbitration awards. Motion for Confirmation at 10-12. As long as the arbitrator has arguably construed the contract and has acted within the

scope of his authority, a reviewing court must defer to the decision. *Id.* (*citing* cases). Only a few enumerated exceptions exist, and none justifies vacating the Award.

### A.   Arbitrator Bloch Did Not "Manifestly Disregard" State Law.

Williams cites the law stating that an arbitration award may be vacated when an arbitrator "manifestly disregards" the law, but simply presumes that because Arbitrator Bloch did not rule in Williams' favor, he disregarded the law. Williams' argument fails as a matter of both law and fact.

#### 1.   The Manifest Disregard Standard Requires The Arbitrator To Recognize A Well-Defined And Explicit Principle And To Consciously Ignore It.

The "manifest disregard" test requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 892 (2d Cir. 1985) (per curiam) (internal quotations omitted). Arbitrators' interpretations of law "are not subject, in the federal courts, to judicial review for error in interpretation." *Wilko v. Swan*, 346 U.S. 427, 436-37 (1953) (footnote omitted)); *Local 863 International Brotherhood of Teamsters v. Jersey Coast Egg Producers, Inc.*, 773 F.2d 530, 533 (3d Cir. 1985) (erroneous interpretation of law is no grounds to set aside arbitral award); *Capital District Chapter of New York State, P.D.C.A. v. International Brotherhood of Painters, Local Union Nos. 201, 12 & 622*, 743 F.2d 142, 148 (2d Cir. 1984) (citing *Wilko* for proposition that arbitrators' interpretations of law are not subject to judicial review for error in interpretation). The Eleventh Circuit has summed up the deferential standard of review: "[a]n arbitrator's result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet, it may not be subject to court interference." *Delta Air Lines, Inc. v. Air Lines Pilot Assoc., Int'l.*, 861 F.2d 665, 670 (11th Cir. 1988).

To reverse a decision on the basis of "manifest disregard," the party seeking to vacate the decision must show much more than an erroneous interpretation. "Manifest disregard of the law may be found . . . if the arbitrator 'understood and correctly stated the law but proceeded to ignore it.'" *Siegel*, 779 F.2d at 893 (*quoting Bell Aerospace Co. Div. of Textron v. Local 516*, 356 F. Supp. 354, 356 (W.D.N.Y.1973), *rev'd on other grounds*, 500 F.2d 921 (2d Cir. 1974)). This

{M2198990;1}
-3-

requires the arbitrator to have "appreciate[d] the existence of a clearly governing principle but [have] decided to ignore or pay no attention to it." *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 381-82 (5th Cir. 2004) (internal quotations and citations omitted). Moreover, the governing principle of law "must be well defined, explicit, and clearly applicable." *Id.* at 382 (internal quotations omitted); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 934 (2d Cir. 1986). As the Eleventh Circuit has explained, the arbitrator "must be conscious of the law and deliberately ignore it." *Montes v. Shearson Lehman Bros., Inc.*, 128 F.3d 1456, 1460 (11th Cir. 1997); *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217, 1223 (11th Cir. 2000). Nothing of the kind occurred here.

        2.    <u>Arbitrator Bloch's Liquidated Damages Analysis Proves He Did Not Manifestly Disregard The Law.</u>

Williams' "manifest disregard" argument focuses on Arbitrator Bloch's discussion of state law that requires liquidated damages to be proportional to actual injury. Williams argues that, because Arbitrator Bloch allegedly did not perform a "proportionality" test after acknowledging its existence, he disregarded the law. However, whether a liquidated damages provision is proportional is a question that arises only if a contract provides for liquidated damages in the first place. If a contract does not provide for liquidated damages, there is no need to analyze whether it is proportional. Thus, before reaching the question of whether Arbitrator Bloch "manifestly disregarded" the law on proportionality, Williams must first show that Arbitrator Bloch manifestly disregarded the law when he rejected Williams' argument that the repayment obligations should be interpreted as involving liquidated damages. Williams cannot make this showing.

        a)    Arbitrator Bloch Did Not Conclude That The Contractual Repayment Obligations Are Subject To A Liquidated Damages Analysis And, Thus, Could Not Have Manifestly Disregarded Any Such Law.

Williams asserts that Arbitrator Bloch "made express note" of Florida and Louisiana cases, but then "refused to apply" them. Motion to Vacate at 11-12. However, Arbitrator Bloch never accepted as a "governing principle" that any obligation to repay advances or incentives in

a contract contemplating a long-term relationship must be analyzed as a form of liquidated damages, let alone ignored a principle of law that is "well defined, explicit, and clearly applicable." *E.g., Brabham*, 376 F.3d at 382; *Merrill Lynch*, 808 F.2d at 934. Consequently, Arbitrator Bloch did not manifestly disregard the law in finding that the repayment provisions were not liquidated damages subject to a proportionality test.

The Opinion devotes three pages to Williams' argument that the contract provisions in this case are a form of liquidated damages. The Opinion first focuses on prior arbitration awards involving the Management Council and NFLPA, and then moves on to discuss state law. It notes that Louisiana and Florida cases disfavor liquidated damages as a penalty when the provision does not bear a reasonable relationship to the anticipated loss. Exh. C at 10-11.[1] However, Arbitrator Bloch then held: "the clauses in these agreements are not liquidated damage provisions; they are, instead terms that highlight, with precision, those circumstances in which bonus monies will be given and those in which they will be taken away." *Id.* at 11 (emphasis added). He elaborated: "Reading the contract as a whole, there is no real question that what was bargained here was a comprehensive incentive and default mechanism" that created "a long-term arrangement that figured prominently in the Club's overall plan." *Id.* The incentives "recognized and accommodated" the long-term arrangement. And, unlike liquidated damages provisions, Arbitrator Bloch concluded that the repayment provisions "were not simply surrogate methods of estimating damages in the event the bargain went sour; rather, they were the essence of the bargain themselves." *Id.* (emphasis added).

As the Opinion demonstrates, Arbitrator Bloch acknowledged the principle that liquidated damages may not be disproportionate to actual injury, but he did not recognize a rule of law that every contract provision that requires repayments are liquidated damages per se. Consequently, he could not have ignored such a rule – if it even exists – in concluding that the repayment provisions were not liquidated damages or penalties.

---

[1] For the Court's convenience, except where otherwise noted, all exhibit citations in this Opposition will be to the exhibits submitted by Williams with the Motion to Vacate.

Indeed, Arbitrator Bloch's interpretation that the provisions at issue are not liquidated damages clauses is consistent with basic principles of contract law, noted in Williams' Motion to Vacate, which define liquidated damages as "'an amount contractually stipulated as a reasonable estimation of actual damages to be recovered by one party if the other party breaches.'" Motion to Vacate at 12 (*quoting* BLACK'S LAW DICTIONARY 393 (7th ed. 1999)); *see also* Exh. K at 15-16 (Dolphins' and Management Council's Pre-Hearing Brief discussing difference between "conditional payments" and liquidated damages) (quoting 11 Corbin, CORBIN ON CONTRACTS, § 1058 at 293, 297-98).[2] Here, as Arbitrator Bloch carefully reasoned in his Opinion, the repayment obligation did not purport to estimate damages; it simply created conditions on which Williams' entitlement to keep certain payments under the Contract hinged. If Williams did not perform the complete agreement for reasons within his control, Williams could not earn the full amount of the signing bonus, incentives, and salary escalators, even if those sums were paid in advance of full performance.[3] Because Arbitrator Bloch construed the Contract to reach that conclusion and did not acknowledge or deliberately disregard any well defined and explicit law to the contrary, he did not manifestly disregard any law dictating that the repayment provisions were subject to a liquidated damages analysis.

Perhaps recognizing that Arbitrator Bloch did not disregard this aspect of liquidated damages law, Williams attempts to equate this case with *Montes v. Shearson Lehman Bros., Inc.*, 128 F.3d 1456 (11th Cir. 1997), by arguing that the Dolphins and Management Council urged Arbitrator Bloch to disregard state law. Not only is this case nothing like *Montes*, there was no such urging.

---

[2] Importantly, the Opinion is also fully consistent with well-established arbitration precedent in the industry, in which virtually identical conditional contract provisions have been uniformly enforced where, as here, the player has failed to satisfy the express conditions in his contract. *See* Exh. K at 10-13 (Dolphins' and Management Council's Pre-Hearing Brief).

[3] By contrast, Williams has retained his base salary for the years he played in the NFL and a percentage of his signing bonus proportionate to the length of the Contract that he did perform. Under the terms of the Contract, that money was his even if Williams failed to perform the rest of his obligations. But the express terms of the Contract, which required Williams to repay a proportional share of the signing bonus, and incentives and salary escalators "regardless of the year in which [they] were earned or paid" provided a basis for Arbitrator Bloch to conclude that these provisions were not penalties, but reimbursement for failing to fulfill a long-term relationship with the Dolphins – in other words, he may not keep the money because he never "earned" it in the first place.

In *Montes*, the Eleventh Circuit vacated an award on the ground that the arbitration panel had manifestly disregarded state law. *Id.* at 1464. During the arbitration hearing on plaintiffs' overtime claim under the Fair Labor Standards Act ("FLSA"), the defendant's attorney argued that the "law says one thing" and "[w]hat equity demands and requires and is saying is another." *Id.* at 1459. The attorney then argued that the arbitrators were "not strictly bound by case law and precedent." *Id.* The *Montes* court also noted that the arbitration ruling denying overtime lacked factual support and lacked any statement in the decision or record showing that the panel did not disregard the FLSA. *Id.* at 1464. Based on these unusual facts and the express urging of defendant's counsel, who recognized that the law did not favor defendants but wanted the Arbitrator to disregard it anyway the, the *Montes* court concluded that the panel had manifestly disregarded the law. *Id.*

Judge Carnes issued a concurring opinion in *Montes* "to emphasize how narrowly the decision in this case is limited to the unusual facts." *Id.* (Carnes, J., concurring). He added that the "Court does not imply that it would find a manifest disregard of the law based on anything less than all of th[e] factors" present in the case, including the concession that the law did not favor the employer, the express request that the panel disregard the FLSA, and the panel's acknowledgment in its opinion that it was urged to do so. *Id.* (further stating that "manifest disregard" would not be shown when an attorney misstates the law to an arbitrator).

Nothing remotely similar occurred in this case. To make the argument that the Dolphins and Management Council urged the arbitrator to disregard applicable state law, Williams cites the Dolphins' and Management Council's argument that repayment provisions are not liquidated damages or penalties. *E.g.*, Motion to Vacate at 11 (citing Ex. K at 2-4 [pre-hearing brief] and Ex. E at 12-13, 33, 18, 102 [hearing transcript]). But those statements did not urge Arbitrator Bloch to ignore law; to the contrary, the Dolphins and Management Council argued that the "proportionality test" urged by Williams under state law was inapplicable as a matter of basic contract law as well as under well-established arbitration precedent in the NFL. Even if that argument led Arbitrator Bloch to apply the wrong legal test, *i.e.*, to conclude that liquidated

damages law did not apply because the contract provisions should not be interpreted as liquidated damages, Arbitrator Bloch did not manifestly disregard the law. Nor is there any showing that the alleged error "was intentional or that the arbitrator made a conscious decision not to follow the appropriate legal standard." *Brown v. ITT*, 211 F.3d at 1223. Thus, this case is not comparable to *Montes*.

Moreover, William's selective citation to the pre-hearing briefs and transcript glosses over the fact that the Dolphins and Management Council also argued that the repayment provisions were valid even if the arbitrator applied a state law proportionality test. *See, e.g.,* Exh. K at 3-4; 19 & fn. 14 (discussing Florida law requiring that liquidated damages provision would be unenforceable only if "out of all proportion to the reasonably anticipated loss from nonperformance") (*quoting MCA Television Ltd. v. Public Interest Corp.*, 171 F.3d 1265, 1271 (11th Cir. 1999)). It is disingenuous for Williams to claim the Dolphins and Management Council urged the arbitrator to ignore state law by citing pages 2-3 of their pre-hearing brief, without mentioning that they argued on pages 3-4 of the same brief that the state law, if applied, would not preclude enforcement of the Contract.[4]

Thus, this case is wholly inapposite to *Montes*. The Dolphins and Management Council have never conceded that the provisions were subject to a liquidated damages analysis – and still do not – and did not ask the arbitrator to ignore clearly applicable law in favor of principles of equity. Thus, Williams cannot shoehorn this case into the *Montes* box. These cases are not alike and, consequently, *Montes* does not provide a basis for vacating the Award.

---

[4] Similarly, Williams ignores the arguments made at the hearing by the Dolphins' and Management Council's counsel that, even if the arbitrator made a liquidated damages analysis, the actual losses would far exceed the amount specified in the Contract. Exh. E at 50-52.

> b) Arbitrator Bloch's Alternative Holding – That The Repayment Obligation Was Not Disproportionate – Demonstrates That He Did Not Manifestly Disregard State Law.
>
> (1) Arbitrator Bloch Expressly Applied The State Law.

Williams' "manifest disregard" argument suffers from another significant defect. Arbitrator Bloch did not just reject the argument that the repayment provisions should be interpreted as liquidated damages; he also determined that, even if they were so interpreted, the amount to be repaid was not disproportionate to the injury the Dolphins suffered. Exh. C at 10-11. Thus, he applied the very law that Williams claims he disregarded.

The Opinion states:

> In support of its claim that the requested recoupment amounts to an indefensible "penalty," the Player cites Louisiana and Florida cases reflecting those courts' disfavor of such damage provisions. The various state law cases do reflect the commonly accepted principle that a liquidated damages contract provision must bear some reasonable relationship to the anticipated loss. On its face, the forfeitures here at issue are substantial. <u>So, however, are the tradeoffs by the Club in gaining the Williams contract -- two first round and a fourth round draft choices. Even were one to embrace a liquidated damage approach, it is not at all clear the stakes would be considered disproportionate</u>.

Exh. C at 10-11 (emphasis added). Arbitrator Bloch also acknowledged that Williams "figured prominently in the [Dolphins'] overall plan." *Id*. at 11. Accordingly, even assuming that Arbitrator Bloch was obligated to decide if Williams' obligation to repay $8.6 million was disproportionate to the harm the Dolphins suffered, Arbitrator Bloch made that determination.

This is fatal to Williams' "manifest disregard" claim. In fact, Arbitrator Bloch rendered an alternative basis for his Award – that the repayment obligation was not disproportionate. Thus, he did not manifestly disregard any law requiring him to render such a finding.

> (2) Arbitrator Bloch Did Not Refuse To Hear Any Evidence.

Equally meritless is Williams claim that Arbitrator Bloch refused to hear evidence and failed to make factual findings regarding the proportionality of the repayment obligation. Motion to Vacate at 8, 12 (*citing* Exh. E at 124, 127, 129). This argument distorts the record,

which conclusively refutes any assertion that Arbitrator Bloch refused to hear evidence on proportionality.

As the basis for this argument, Williams cites only to three pages of the hearing record. Motion to Vacate at 8, 12 (*citing* Exh. E at 124, 127, 129). The cited exchanges occurred at the tail end of the hearing, after the attorneys had completed their presentations, and during a discussion between Arbitrator Bloch and counsel about what evidence they intended to offer in the case. Exh. E at 120-130. During that exchange, Arbitrator Bloch stated that he would put off evidence of "actual damages" unless he found the Contract's repayment obligations unenforceable – i.e., if he determined that the repayment obligations in the contract should be interpreted, as Williams had argued, as unenforceable liquidated damages penalties. *Id.* at 124 (stating he would hear evidence about whether the Dolphins lost money "if it comes to a point where, for some reason, the remedy is to set aside these provisions and have the parties have recourse to a standard damage approach"). In other words, Arbitrator Bloch said that he would hear the evidence of the Dolphins' actual losses only if he interpreted the repayment provisions to be a penalty and disproportionate and, thus, then needed to apply a traditional measure of damages for breach of contract. *Id.*

At no time did Williams' counsel object to this proposal. In fact, Williams' counsel acknowledged that the damages evidence Williams sought to offer – testimony that the Dolphins did not refund the price of tickets to fans who wanted refunds after Williams retired – "really gets into damages." Exh. E at 126. He never said this evidence should be heard for the purpose of deciding whether the repayment obligation should be interpreted as a liquidated damages penalty in the first place. Thus, there is no factual basis for Williams' assertion that the arbitrator refused to hear evidence relevant to his liquidated damages argument.

Further, even if Williams had not waived any argument about evidence, he cannot show the alleged "evidence" would have likely resulted in a different outcome. The only "evidence" of damages that Williams cited at the hearing or in his pre-hearing brief was the Dolphins' statement that it would not refund tickets. Exh. E at 126; Exh. L at 10. This evidence was

included in the pre-hearing exhibits, so it would be incorrect to assume that Arbitrator Bloch failed to consider it. *See* Exh. E to Williams' Pre-Hearing Brief, attached as Tab D to Dolphins' and Management Council's Motion for Confirmation. Moreover, ticket sales are only one measure of damages. As Arbitrator Bloch recognized, the Dolphins also gave up three draft picks and lost a key component of their long-term plans.[5] Exh. C at 11-12. Thus, there was ample evidence – and nothing Arbitrator Bloch refused to consider – on which he could conclude that the amount Williams had to repay was not disproportionate to the Dolphins' actual injury.

Williams cites a single, unpublished case for the proposition that the "failure" to make "required factual findings constitute[s] grounds for vacatur," but it is readily distinguishable. In *Daily News v. Newspaper & Mail Deliverers' Union of New York*, No. 99 Civ. 5166, 1999 WL 1095613 (S.D.N.Y. Dec. 2, 1999), an arbitrator issued an initial award of millions of dollars in retroactive wage increases to union employees. In subsequent proceedings, the employer, a newspaper publisher, presented audited financial statements indicating that it could not pay the award. *Id.* at *4-5. The arbitrator then issued a final award imposing the wage increase. The final award acknowledged the enormity of that award, referred to the employer's position that it could not pay the awarded wage increases, and mentioned the newspaper's claim that the award might jeopardize the newspaper's entire workforce, but the arbitrator did make any findings about the potential impact on the newspaper. *Id.* at *5. On review, the district court concluded that the arbitrator had manifestly disregarded evidence "of the most critical nature" that raised the question of whether the wage increases might bankrupt the newspaper. *Id.* at *7-8. The arbitrator acknowledged the "enormity" of the wage increases and, consequently, the district court found his failure to consider whether they threatened the survival of the newspaper (and "the total cessation of all wages") constituted manifest disregard of the evidence. *Id.* at *10.

---

[5] In discussions of the evidence the Dolphins intended to present, Arbitrator Bloch also was told about significant marketing materials that the Dolphins created using Williams. Exh. E at 126. Williams' counsel even offered to stipulate "that the Dolphins used Ricky Williams a lot to market the team. . . ." *Id.* Given other likely losses to the Dolphins, such as a decline in future ticket sales and decreases in sales of memorabilia bearing Williams' likeness as well as the even more substantial damage to the team's success on the playing field for current and future seasons caused by Williams' abandonment, $8.6 million is a paltry sum.

That is not the situation in this case. To the extent a finding on whether the award was disproportionate to the actual injury was necessary (which, because the arbitrator concluded that the contract did not involve liquidated damages, it was not), Arbitrator Bloch had the evidence before him and rendered a decision. The only evidence Williams purported to offer was that the Dolphins did not have to refund season tickets during the 2004 season. But Arbitrator Bloch – who is an experienced industry arbitrator to whom the parties to the CBA have entrusted such decisions – found that another measure of the Dolphins' loss – the three draft picks – alone were sufficient tradeoffs to defeat any argument that the $8.6 million was disproportionate. Thus, there is no basis for this Court to find that Arbitrator Bloch manifestly disregarded any evidence in reaching that conclusion.

### B.   Arbitrator Bloch's Award Did Not Violate Public Policy

Williams also argues that the Award should be vacated because it violates Florida and Louisiana public policy. This argument simply bootstraps from the argument that the repayment obligation should have been interpreted as an impermissible penalty and, thus, enforcing it violates public policy against such penalties.

The Award does not violate public policy. "The public policy exception . . . allows courts to refuse to enforce awards where enforcement would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Brown v. Rauscher Pierce Refenses, Inc.*, 994 F.2d 775, 782 (11th Cir. 1993) (internal quotations and citations omitted). "[T]he public policy exception is implicated when enforcement of the award compels one of the parties to take action which <u>directly</u> conflicts with public policy." *Id.* (emphasis added). Where, however, the "public policy argument is no more than a complaint that the [arbitrator] failed to interpret the law correctly[, a court] may not set aside an arbitration award because the [arbitrator] erred in its interpretation of the law." *Id.* As the Supreme Court has said, the "public policy" exception is "narrow." *Eastern Associated Coal Corp. v. United Mine Workers of America Dist. 17*, 531 U.S. 57, 63 (2000).

Williams argues that the Award violates the public policy against imposing penalties for breach of contract that are disproportionate to actual harm. Motion to Vacate at 15-18. He thus simply repeats his defective "manifest disregard" argument. The test for vacating an arbitration award on public policy grounds requires more than just an erroneous ruling. As the Eleventh Circuit explained in *Brown v. Rauscher Pierce Refsnes*, "[t]ypically, the public policy exception is implicated when enforcement of <u>the award compels one of the parties to take action</u> which directly conflicts with public policy." *Brown v. Rauscher Pierce Refsnes*, 994 F.2d at 782 (emphasis added). To illustrate this test, it cites examples such as awards ordering reinstatement of a pilot who had piloted aircraft while drunk and of a nuclear power plant machinist who had pulled a fuse on a containment area door in violation of regulatory provisions. *Id.* In contrast, the *Brown* court declined to set aside on public policy grounds an award of damages against a broker who failed to register with the state to sell securities. *Id.* The court rejected the plaintiffs' argument that the arbitration panel's failure to apply Florida's statutory damages formula resulted in an inadequate award and, thus, contravened public policy. *Id.* at 778, 782-83 (rejecting argument that Florida statutory damages reflects an "explicit public policy").

This is consistent with the holding of another case Williams cites, *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, Int'l. Brotherhood of Teamsters*, 989 F.2d 1077 (9th Cir. 1993). In *Phoenix Newspapers*, the court found an arbitrator's remedy violated the public policy of the National Labor Relations Act that leaves negotiations of wages to employers and unions. *Id.* at 1083-84. The arbitrator's order required the parties to negotiate a wage increase, but retained authority for the arbitrator to impose his own wage increase if the parties failed to agree. This compelled action in violation of public policy, because it forced the parties to agree to a wage increase, even though the NLRA expressly states that the obligation to bargain collectively "does not compel either party to agree to a proposal. . . ." *Id.* at 1084 (*citing* 29 U.S.C. § 158(d). Nothing like that happened here.

Williams also relies heavily on *National Football League Players Association v. Pro-Football, Inc.*, 857 F. Supp. 71 (D.D.C. 1994) ("*Pro-Football*"), to suggest that any award

allegedly contrary to state law invites scrutiny and reversal as a violation of public policy. Such a holding, however, would render "in violation of public policy" identical to "incorrect," which is not *Pro-Football*'s holding. And, if this were the law, the entire manifest disregard standard would be obliterated.

In fact, *Pro-Football* is consistent with *Brown v. Rauscher Pierce Refesnes* and *Phoenix Newspapers* because it also addresses an award that would force a party to engage in action that violates a public policy – indeed, an action that was criminal under state law. In *Pro-Football*, an arbitrator ordered a NFL team to suspend some of its players for failing to pay dues to a union. However, Virginia, which the court found to be the players' primary job situs, was a "right to work" state that had expressly declared the "public policy of the state" to be that the right to work should not be denied or abridged on account of membership or nonmembership in a union. *Id*. at 75 (*quoting* Va. Code Ann. § 40.1-58.) Under Virginia law, a violation of that statute was a misdemeanor. *Id*. (*citing* Va. Code Ann. § 40.1-69.) The district court held that the arbitration award violated public policy, because it would force the team to break the law. *Id*. at 76, 80.

Nothing in Arbitrator Bloch's award requires Williams to violate public policy. All he has to do is repay money he received under the express terms of his Contract, which clearly delineated the circumstances in which he would be entitled to retain the full signing bonus, incentives, and salary escalators. There is no strong public policy against enforcing those provisions. In fact, common sense would dictate that public policy would favor the encouragement of parties to honor and comply with their contracts.

Indeed, to concoct a "public policy" argument, Williams plays fast and loose with the relevant law. He states that the "violation of state public policy is especially manifest in the portion of the Award ordering Williams to pay monies" from the Saints, "because the Louisiana Civil Code specifically states that the enforcement of such a penalty violates its public policy." Motion to Vacate at 17 (*citing* La. Civ. Code § 2012.) Actually, that statute recognizes that stipulated damages provisions are enforceable. La. Civ. Code § 2012. They "may not be modified by the court unless they are so manifestly unreasonable as to be contrary to public

policy." La. Civ. Code § 2012. Here, the arbitrator has already concluded that the repayment award is not clearly disproportionate to actual injury. It therefore is not "manifestly unreasonable" in violation of state law. Thus, the order requiring Williams to repay the money he received does not require him to contravene state law. The only way to make that argument is to disregard the arbitrator's underlying ruling and ignore the deferential standard of review of arbitration awards.

Similarly, Williams suggests the Award would violate public policy because a Louisiana statute prevents forfeiture of wages and states that "'employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.'" Motion to Vacate at 17-18 (*quoting* La. Rev. Stat. Ann. §23:634(A)). This begs the question of whether Williams "earned" the signing bonus, incentives, and salary escalators. Arbitrator Bloch held otherwise when he concluded, in interpreting the Contract, that Williams' retention of the full amount of these sums required his long-term performance and that Williams had in fact not <u>earned</u> the amounts at issue. Exh. C at 11.

Fundamentally, if taken to its logical conclusion, Williams' argument that repayment violates Louisiana wage law would mean that Williams never had to play football at all to keep the $6 million signing bonus. By Williams' logic, he "earned" that money the instant he put his name on the Saints Contract and, thus, even if he "retired" a few weeks later, requiring him to repay the money would be an unenforceable penalty. That argument defies credulity and it has been repeatedly rejected by NFL arbitrators in interpreting similar contract provisions. *See* Exh. K at 10-13 (Dolphins' and Management Council's Pre-Hearing Brief). Where, as here, the arbitrator interpreted the Contract and concluded that the signing bonus, incentives, and salary escalators were part of a long-term arrangement to be earned over the duration of the Contract, no strong public policy mandates that Williams be allowed to walk off with that money while refusing to work.

### III. CONCLUSION

For the reasons set forth above, the Dolphins and Management Council request that this Court deny the Motion to Vacate and, pursuant to the pending Motion for Confirmation of Arbitration Award, confirm Arbitrator's Bloch's Award.

Respectfully submitted,

Date: January 13, 2005

**AKERMAN SENTERFITT**
One Southeast Third Avenue
28th Floor
Miami, FL 33131-1714
Telephone No. (305) 374-5600
Facsimile No. (305) 374-5095

By _____
STANLEY H. WAKSHLAG
Florida Bar No. 266264
E-mail: swakshlag@akerman.com
CHRISTOPHER S. CARVER
Florida Bar No. 993580
E-mail: ccarver@akerman.com

*Counsel for Miami Dolphins, Ltd.*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
Telephone No. (202) 887-4067
Facsimile No. (202) 955-7791

By _____
DANIEL L. NASH
E-mail: dnash@akingump.com
*Pro Hac Vice*
REX S. HEINKE
JESSICA M. WEISEL

*Counsel for National Football League Management Council*

{M2198990;1}

-16-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of the *Memorandum of Law of Petitioners Miami Dolphins and National Football League Management Council in Opposition to Respondents' Cross-Motion to Vacate the Arbitration Award* were served by U.S. mail this 13th day of January, 2005, on:

Edward Soto, Esq.
WEIL GOTSHAL & MANGES LLP
1395 Brickell Avenue
Suite 1200
Miami, Florida 33131

Jeffrey L. Kessler, Esq.
David G. Feher, Esq.
Melanie, Moss, Esq.
DEWEY BALLANTINE LLP
1301 Avenue of the Americas
New York, New York 10019

Richard A. Berthelsen, Esq.
General Counsel
National Football League Players Association, Inc.
2021 L Street, N.W.
Washington, D.C. 20026

_____
Attorney