UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

CASE No: 04-61422-Civ-Cohn/Snow

MIAMI DOLPHINS, LTD. and )
NATIONAL FOOTBALL LEAGUE )
MANAGEMENT COUNCIL, )
 )
 Petitioners, )
 )
vs. )
 )
ERRICK L. "RICKY" WILLIAMS and )
NATIONAL FOOTBALL LEAGUE )
PLAYERS ASSOCIATION, )
 )
 Respondents. )
_____)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' MOTION FOR CONFIRMATION OF ARBITRATION AWARD**

{M2202875;2}

*Miami Dolphins, Ltd. v. Williams*
Case No. 04-61422-CIV-COHN/SNOW

I.  **INTRODUCTION**

Respondent Ricky Williams was a star professional football player who unilaterally decided to walk out on the Dolphins and their fans in the middle of his long-term contract and on the eve of a new football season. Williams' walkout came after the team had mortgaged its future by trading several draft picks to obtain the contractual rights to his playing services. Following the trade, the Dolphins acquiesced to Williams' demands for a new contract – by adding generous performance-based bonus provisions expressly contingent on Williams' full performance of the terms of the revised contract <u>without</u> extending the length of the Contract – and proceeded to plan the team's entire offense around him. The impact of Williams' walkout on his team was obvious and cannot be overstated. As every NFL fan knows, in 2004, the Dolphins had one of the worst seasons in the team's illustrious history.

The impact of Williams' walkout on his contractual obligations was equally obvious. As correctly held by Arbitrator Bloch, under the clear and unambiguous terms of his Contract, Williams' walkout obligated him to refund approximately $8.6 million of advance payments that he is not entitled to retain because he failed to satisfy the express condition under which those payments had been made – i.e., his promise to play for the duration of his Contract.

Now, after taking the benefits, Williams attempts to avoid those portions of his Contract and the NFL Collective Bargaining Agreement ("CBA") that no longer suit his interests, particularly his clear promises to complete the full term of his Contract and to abide by the arbitration provisions of the CBA. In doing so, Williams completely ignores that this proceeding is governed by federal labor law. Instead, he misstates the governing legal standard, distorts Arbitrator Bloch's Opinion and the proceedings below, and argues that he should escape compliance based upon state law principles that he inaccurately describes and are inapplicable in any event. Most incredibly, Williams even goes so far as to claim that requiring him to honor his

contractual commitments following his abandonment of his team and its fans would somehow violate "public policy."

Quite obviously, Williams has not – and, indeed, cannot – meet his burden in preventing confirmation of the Award, which, as explained previously, is required by well-settled principles of federal law. No matter how much he attempts to distort the Award and Opinion, the proceedings below, or the Dolphins' arguments in support of confirmation, Williams simply cannot show that Arbitrator Bloch's interpretation of the Contract constitutes "manifest disregard" of the law or somehow violates public policy.[1]

Accordingly, the Court should reject Williams' arguments and should confirm the Award.

II. **WILLIAMS CANNOT OVERCOME THE HIGHLY DEFERENTIAL STANDARD OF REVIEW REQUIRED TO BE APPLIED TO LABOR ARBITRATION DECISIONS LIKE THE ONE PRESENTED HERE**

   A. **This Proceeding Is Governed by Well-Established Principles of Federal Law which Require Confirmation of the Award**

From reading Williams' Opposition Brief, one would hardly know that this proceeding, unlike virtually every state law commercial case he cites, involves the enforcement of an arbitration award issued pursuant to a collective bargaining agreement. But as previously explained, federal labor law requires enforcement of such arbitration awards, which are subject to very limited judicial review. *See* Motion for Confirmation at 10-12. Where, as here, an arbitrator even arguably construes a contract and acts within the scope of his authority, a

---

[1] Williams' Opposition lists a series of "concessions" that he claims have been made by the Dolphins. *See id.* at 1-3. Williams' distortions are so obvious that they do not warrant an extended reply. For example, he argues that, "as to amounts already earned," the Dolphins "do not dispute that Louisiana law flatly prohibits the forfeiture of salary that an employee has already earned, even if the employee resigns from his job." *Id.* at 2 (emphasis supplied). Of course, there is no need to address this point because the Arbitration Award makes clear that Louisiana law does not apply. And, Williams did not just "resign from his job," he walked out in the middle of a long-term contract. Moreover, one of the central questions of contract interpretation resolved by Arbitrator Bloch was that the "amounts" Williams refers to were not "salary" but a bonus paid in advance that Williams did not "earn." Similarly, Williams continues to argue that the Dolphins urged Arbitrator Bloch to "ignore" state liquidated damages law when the record establishes that no such thing occurred. To the contrary, in the proceedings below, the Dolphins argued (and Arbitrator Bloch agreed) that the state law cases cited by Williams were inapplicable for a number of reasons, including because the contract provisions at issue should not be interpreted as liquidated damages provisions in the first place.

reviewing court must defer to the arbitrator's ruling. Motion at 11 (citing cases); *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001).

Nowhere is this principle more applicable than here, where Arbitrator Bloch was called upon to apply his specialized knowledge of the CBA and the industry to interpret and apply specific contract language. As the Supreme Court has explained time and again, "arbitrators are in a better position than courts <u>to interpret the terms of a CBA</u>." *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 78 (1998) (italics in original). Accordingly, even where a court believes that the arbitrator has committed a serious error, it cannot vacate the award. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. at 509 (citing *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 36 (1987)); *Wilko v. Swan*, 346 U.S. 427, 436-37 (1953) (award may not be vacated for error in interpreting the law); *Local 863 Int'l Brotherhood of Teamsters v. Jersey Coast Egg Producers, Inc.*, 773 F.2d 530, 533 (3d Cir. 1985) (erroneous interpretation of law is no grounds to set aside arbitral award).

### B.   The Arbitration Award Does Not "Manifestly Disregard" Applicable Law

In an effort to avoid the well-established principles of federal labor law that require confirmation, Williams argues that the Arbitration Award "manifestly disregards" Florida and Louisiana state laws that govern "liquidated damages."[2] This argument is meritless.

As previously explained, "manifest disregard" of the law does not occur simply because an arbitrator commits an error in law. Dolphins' Opposition to Williams' Motion to Vacate at 3; *see, e.g., Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 892 (2d Cir. 1985) (per curiam). An award

---

[2] Although Williams' arguments based on Louisiana law are addressed, the Dolphins submit that Louisiana law is completely irrelevant. As noted previously, after the trade, Williams demanded a renegotiation of the contract entered into with the Saints. Although the Dolphins had no obligation to do so, Williams' demand was met by execution of a new contract with the Dolphins containing substantial performance incentives. The new contract expressly states that it (i) "will govern the relationship between the Player and Club" and (ii) "is made under and shall be governed by the laws of the State of Florida." Tab C, Jt. Ex. 4 at ¶¶ 21 & 22. Moreover, the provisions governing the signing bonus were <u>specifically</u> incorporated as Addendum 1 to the Dolphins Agreement. *See id.* at ¶ 25. Therefore, the Saints contract is a nullity and Louisiana law has no bearing on these proceedings.

may be vacated on the grounds of manifest disregard only if the party seeking to vacate the award can show that the arbitrator "'understood and correctly stated the law but proceeded to ignore it.'" *Siegel*, 779 F.2d at 893 (quoting *Bell Aerospace Co. Div. of Textron v. Local 516*, 356 F. Supp. 354, 356 (W.D.N.Y.1973), *rev'd on other grounds*, 500 F.2d 921 (2d Cir. 1974)); *see also* Dolphins Opposition at 3-4. The arbitrator "must be conscious of the law and deliberately ignore it." *Montes v. Shearson Lehman Bros., Inc.*, 128 F.3d 1456, 1460 (11th Cir. 1997) (emphasis added); *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1223 (11th Cir. 2000); *see also Flexible Mfg. Sys. Pty. Ltd. v. Super Prods. Corp.*, 86 F.3d 96, 100 (7th Cir. 1996) ("The fact that an arbitrator makes a mistake, by erroneously rejecting a valid, or even a dispositive legal defense, does not provide grounds for vacating an award unless the arbitrator deliberately disregarded what she knew to be the law."). This requires "some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it." *O.R. Sec., Inc. v. Professional Planning Assocs., Inc.*, 857 F.2d 742, 747 (11th Cir. 1988) (emphasis added). Indeed, to permit challenges based on errors of law in the guise of manifest disregard argument "would result in re-litigation of the claim, in violation of the basic purposes of arbitration: a fast, inexpensive resolution of claims." *Id.*

    1.    Arbitrator Bloch Was Well Within His Authority to Reject Williams' Interpretation of the Contract

Williams has not – and cannot – demonstrate that Arbitrator Bloch manifestly disregarded any law because all of his arguments are premised upon his claim – correctly rejected by Arbitrator Bloch below – that the provisions in his Contract obligating him to repay the amounts at issue should be interpreted as "liquidated damages." But, as previously explained and as interpreted by Arbitrator Bloch, the Contract provisions were not intended to be nor should they be interpreted as "liquidated damages" provisions. Rather, Williams' entitlement to retain the

advance payments made under these provisions was subject to an express "condition subsequent" – i.e., his promise to play for the entire duration of his multi-year Contract.

Thus, in the arbitration proceedings below, the parties argued extensively over this central question of contract construction. For example, the Dolphins argued that basic contract law makes an important distinction between contract provisions containing "conditions subsequent" and those which provide for "liquidated damages" in the event of breach. As explained to Arbitrator Bloch, a "condition subsequent" is defined as "any fact the existence or occurrence of which, by agreement of the parties, discharges a duty of performance that has arisen." J. Perillo, *Calamari and Perillo on Contracts* (5th Ed. 2003), § 11-7 at 416; *see also* 8 Corbin, *Corbin on Contracts,* § 39.1 at 474 (describing a "condition" as "an event which qualifies a duty under a contract"). On the other hand, a liquidated damages provision is an "agreement[] fixing the amount of damages to be paid in satisfaction of a claim for injury suffered by reason of a breach." 11 Corbin, *Corbin on Contracts*, § 1058 at 293. Thus, conditional payments are distinguishable from liquidated damages provisions:

> An agent's right to compensation can be made expressly conditional upon the rendition of a specified performance by him. If the performance is not rendered, his right to the compensation never arises. <u>Such a provision is not regarded as one that fixes a penalty for breach of duty; neither is it a provision for liquidated damages.</u>

11 Corbin, *Corbin on Contracts*, § 1058 at 297-298 (emphasis added).

As he does here, Williams argued a contrary interpretation, urging Arbitrator Bloch to construe the Contract as providing for the payment of liquidated damages that, under state law, must be reasonably proportional to the damages caused by the breach. For example, as he does here, Williams argued that the state law regarding liquidated damages should apply because the repayment obligations in Williams' Contract had the same "effect" as a liquidated damages provision. However, Arbitrator Bloch rejected this interpretation and, instead, determined – as he clearly was empowered to do – that Williams was obligated to repay the incentive bonuses not as

a liquidated damages penalty but because he had failed to satisfy the conditions subsequent upon which entitlement to retain the money was based. Thus, as reasonably interpreted by Arbitrator Bloch, Williams was not required to repay amounts already "earned" as damages; to the contrary, Arbitrator Bloch made it clear that Williams had failed to "earn" the money in the first place and therefore it must be repaid. Tab B at 11.[3] This was precisely the type of question of contract interpretation that the CBA entrusts Arbitrator Bloch to make, and under the principles discussed above, his interpretation is entitled to substantial deference here.

2. Arbitrator Bloch Did Not "Ignore" Any Applicable Law

In an effort to avoid the obvious fact that he is asking the Court to impermissibly interpret the Contract differently, Williams claims that Arbitrator Bloch somehow acknowledged the state law pertaining to liquidated damages <u>applied</u> to the Contract provisions at issue here and then deliberately chose to ignore such law. Respondents' Opp. at 6-7. To the contrary, as explained above, Arbitrator Bloch specifically rejected Williams' interpretation that the Contract should be interpreted as a liquidated damages provision; he therefore did not <u>ignore</u> any such <u>applicable</u> law, but rather determined that the law simply was not applicable. Williams distorts this by quoting the Arbitrator's statement that "whether a provision is seen as a forfeiture, penalty, refund or return, the end result is the same: Net monies are reduced." Opp. at 10, quoting Tab B at 11. But Williams conveniently ignores the rest of that paragraph:

> But there are meaningful differences in the nature of the financial arrangements and, hence, in the contractual consequences of a breach. Reading the contract as a whole, there is no real question that what was bargained here was a comprehensive incentive and default mechanism. At stake was not solely a series of individual field performance goals and rewards for the player but also a long-term arrangement that figured prominently in the Club's overall plan. Under the circumstances, it was not unreasonable for the parties to structure incentives that recognized and accommodated both expectations. <u>These were not simply</u>

---

[3] Except where noted, all record citations in this Reply refer to the documents appended to the Dolphins' and the Management Council's motion.

<u>surrogate methods of estimating damages in the event the bargain went sour; rather, they were the essence of the bargain themselves.</u>

Tab B at 11 (emphasis added). Put simply, Arbitrator Bloch concluded that the repayment obligations were not liquidated damages. Nothing in this statement, when read in context, recognized a governing principle of law that required Arbitrator Bloch to treat the repayment obligations as liquidated damages.[4] Consequently, no matter how Williams seeks to distort it, this statement does not establish any manifest disregard for the law.

### 3. The Award Does Not Violate State Liquidated Damages Law

In any event, Williams' entire "manifest disregard" argument also fails because, even assuming that Arbitrator Bloch was somehow required to interpret the Contract as involving liquidated damages, Williams cannot show that the Award would have been different. *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003) ("We will, of course, not vacate an arbitral award for an erroneous application of the law if a proper application of law would have yielded the same result."). Moreover, "[i]f there is 'even a barely colorable justification for the outcome reached,' the court must confirm the arbitration award." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13 (2d Cir. 1997), quoting *Matter of Andros Compania Maritima, S.A. of Kissavos (Marc Rich & Co., A.G.)*, 579 F.2d 691, 704 (2d Cir. 1978).

Here, Arbitrator Bloch determined that, even if the Contract provisions at issue are interpreted as liquidated damages, the repayment amount was not clearly disproportionate to the Dolphins' actual injury. Tab B at 11. Thus, Arbitrator Bloch noted that the damages caused by Williams' walkout were obviously significant because the Dolphins had made "substantial

---

[4] Similarly, contrary to Williams' argument (Opp. at 10-11), Arbitrator Bloch's statement that the parties sought to "ensure a long-term relationship" through the Contract (Tab B at 12) does not establish that he found the repayment provisions to be liquidated damages clauses or that he recognized a rule of law requiring him to conclude they were. Indeed, his express holding that they were not liquidated damages proves otherwise.

tradeoffs," which included giving up three future draft picks to obtain the right to Williams' playing services for the full duration of his Contract. *Id.* Consequently, even if the Court were to substitute its judgment on the threshold question of whether the Contract provisions should be interpreted as liquidated damages clauses, Arbitrator Bloch's alternative holding justifies the Award. *See, e.g., Duferco Int'l Steel Trading*, 333 F.3d at 390 ("[W]here an arbitral award contains more than one plausible reading, manifest disregard cannot be found if at least one of the readings yields a legally correct justification for the outcome.").[5]

Williams cannot challenge this conclusion with the claim that Arbitrator Bloch was required to conduct an evidentiary hearing on this issue of actual damages. In fact, Williams' counsel said such evidence went to actual damages. *See* Dolphins' Opp. to Mot. to Vacate at 9-10. Consequently, the parties agreed to present evidence of actual damages only in the event Arbitrator Bloch refused to enforce the contractual repayment provisions – in other words, if he interpreted the Contract as providing for unenforceable liquidated damages. *See* Mot. to Vacate Exh. E at 124-130. In that event, the issue of damages would become relevant because the Dolphins would be entitled to seek recovery of the actual damages caused by Williams' breach. Thus, Williams' counsel conceded that the evidence would not have informed Arbitrator Bloch's decision on the threshold question of whether the provision was enforceable.

"An arbitration award must not be set aside for the arbitrator's refusal to hear evidence that is cumulative or irrelevant." *Robbins v. Day*, 954 F.2d 679, 685 (11th Cir. 1992), *overruled*

---

[5] In addition, the Florida Supreme Court has held that liquidated damages clauses are valid when potential damages from breach are uncertain at time of contracting. *Hutchinson v. Tomkins*, 259 So.2d 129, 132 (Fla. 1972); *accord Atlanta Jet v. Liberty Aircraft Servs., LLC*, 866 So.2d 148, 151 (Fla. 4th DCA 2004) (upholding liquidated damages clause "because damages were not readily ascertainable at the time the Contract was drawn up"). Thus, as the damages from Williams' potential breach were uncertain when he signed the Contract, the repayment provisions were valid even if scrutinized as liquidated damages. At the time of contracting, neither party could be certain about the actual damages that would result if Williams abandoned his team. Therefore, the repayment obligation would be a valid liquidated damages provision under Florida law – and, as noted above, Louisiana law is irrelevant to these proceedings. As a result, Arbitrator Bloch's conclusion is consistent with Florida law.

on other grounds, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Having stated in the arbitration hearing that the evidence would be offered for a different purpose – and did not need to be offered before Arbitrator Bloch decided if the provisions should be enforced – Williams cannot now claim in this Court that the evidence was relevant or would have changed the outcome.

Nor has Williams identified any evidence that might have changed the outcome, even though he had the burden of proving the repayment obligations were unenforceable. *J.M. Beeson Co. v. Sartori*, 553 So. 2d 180, 181 (Fla. 4th DCA 1989) ("where liquidated damages are attacked, it is the burden of the defendant to raise the excessiveness of the damages as an affirmative defense"), citing C.T. McCormick, Handbook on the Law of Damages at 622-623 (1977). The only evidence pertaining to actual damages to which Williams has ever pointed concerned the Dolphins' refusal to refund tickets. Such evidence might have shown that the Dolphins did not lose any ticket money from existing ticket holders demanding refunds during this past season. Mot. to Vacate Exh. E at 126; Tab B at 10. However, the absence of one type of loss (particularly for only one year) does not mean that the Dolphins did not suffer other losses, such as the "substantial" consideration the Dolphins gave up in the form of draft picks and the long-term damages resulting from planning the team's offense around Williams. *See* Tab B at 11. Accordingly, the allegedly refused evidence is a red herring.

### C. Arbitrator Bloch's Award Did Not Violate Public Policy

Finally, there is no merit to Williams' claim that confirmation of the Award would somehow violate "public policy." Again, Williams simply equates an error in law with a violation of public policy. But, the "public policy exception is implicated when enforcement of the award compels one of the parties <u>to take action which directly conflicts with public policy</u>." *Brown v. Rauscher Pierce Refenses, Inc.*, 994 F.2d 775, 782 (11th Cir. 1993) (internal quotations and

citations omitted, emphasis added); *see generally* Dolphins' Opp. to Mot. to Vacate at 12-15. The Award does not require Williams to take any action that contravenes any public policy, and Florida and Louisiana law do not even support his public policy arguments. *See* Dolphins' Opp. at 12-15. If anything, allowing Williams to keep the money he has wrongly retained after walking out on his team and its fans would be an affront to "public" policy.

In this regard, Williams' effort to support the claim that confirmation would violate the public policy of Louisiana is particularly disingenuous. For example, he claims that

> [A]s to the signing bonus portion of his <u>salary</u> that Mr. Williams was paid by the New Orleans Saints in Louisiana, much of which the Dolphins seek here, Louisiana law (which governs the Saints contract assumed by the Dolphins) expressly provides that an employee who leaves his job may <u>not</u> forfeit any <u>salary</u> he has already <u>earned</u>.

Opp. at 6 (emphasis added). Of course, this argument ignores the Arbitrator's determination that Williams did not <u>earn</u> the full amount of the signing bonus because it was paid on the express condition that he would complete the entire term of the Contract. But even more notably, Williams has simply misrepresented the signing bonus as <u>salary</u> in a tortured attempt to fit his arguments against confirmation within the Louisiana wage payment statute. Williams fails to inform the Court that the "Additional Consideration Signing Bonus" (Addendum 2 to the Dolphins' Contract) states, "It is expressly understood that no part of the bonus herein provided is part of any <u>salary</u> in the contracts specified above." Tab C, Jt. Ex. 4 (emphasis added).[6]

---

[6] Williams also notes that an arbitration award may be vacated if it is "arbitrary and capricious." Opp. at 4-5. However, he does not seriously argue that the award should be vacated on that basis, nor can he. A decision may not be vacated as arbitrary and capricious only if "no ground for the decision can be inferred from the facts." *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d at 1223. "For an award to be vacated as arbitrary and capricious, the [arbitrator's] award must contain more than an error of law or interpretation . . . . Rather, there must be no ground for the Panel's decision." *Brown v. Rauscher Pierce Refenses, Inc.*, 994 F.2d at 781. Arbitrator Bloch's Opinion sets forth the grounds for the Award, so the Award cannot be deemed arbitrary or capricious.

*Miami Dolphins, Ltd. v. Williams*
Case No. 04-61422-CIV-COHN/SNOW

## III. CONCLUSION

For the reasons set forth in the Motion and above, the Arbitration Award should be confirmed.

Respectfully submitted,

Date: January 25, 2005

**AKERMAN SENTERFITT**
One Southeast Third Avenue
28th Floor
Miami, FL 33131-1714
Telephone No. (305) 374-5600
Facsimile No. (305) 374-5095

By _____
STANLEY H. WAKSHLAG
Florida Bar No. 266264
E-mail: swakshlag@akerman.com
CHRISTOPHER S. CARVER
Florida Bar No. 993580
E-mail: ccarver@akerman.com

*Counsel for Miami Dolphins, Ltd.*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
Telephone No. (202) 887-4067
Facsimile No. (202) 955-7791

By _____
DANIEL L. NASH
E-mail: dnash@akingump.com
*Pro Hac Vice*
REX S. HEINKE
JESSICA M. WEISEL

*Counsel for National Football League Management Council*

*Miami Dolphins, Ltd. v. Williams*
Case No. 04-61422-CIV-COHN/SNOW

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of the *Reply Memorandum of Law in Support of Petitioners' Motion for Confirmation of Arbitration Award* were served by U.S. mail this 25th day of January, 2005, on:

Edward Soto, Esq.
WEIL GOTSHAL & MANGES LLP
1395 Brickell Avenue
Suite 1200
Miami, Florida 33131

Jeffrey L. Kessler, Esq.
David G. Feher, Esq.
Melanie, Moss, Esq.
DEWEY BALLANTINE LLP
1301 Avenue of the Americas
New York, New York 10019

Richard A. Berthelsen, Esq.
General Counsel
National Football League Players Association, Inc.
2021 L Street, N.W.
Washington, D.C. 20026

_____
Attorney