UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

CASE NO: 04-61422-CIV-COHN/SNOW

MIAMI DOLPHINS, LTD., and
NATIONAL FOOTBALL LEAGUE
MANAGEMENT COUNCIL,

    Petitioners,

vs.

ERRICK L. "RICKY" WILLIAMS and
NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION,

    Respondents.

_____/

**RESPONDENTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD**

NIGHT BOX FILED

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL



The Miami Dolphins, Ltd. ("Dolphins") and the National Football League Management Council ("NFLMC") advance three arguments to try to defend an Arbitration Award which clearly disregards and violates the law and public policy of both Florida and Louisiana. They argue that: (1) the Arbitrator did not ignore controlling law (even though he referenced and then failed to apply it in his Award); (2) the Award does not enforce contractual penalties (even though the Dolphins and the NFLMC concede that these stipulated payments were intended to induce Mr. Williams not to commit a contractual breach, as opposed to estimating potential damages); and (3) the Arbitrator actually applied the law by determining that the amounts to be paid are commensurate with the damages allegedly suffered by the Dolphins (even though no evidence was received on this issue). Each of these arguments is wholly meritless and the Award must be set aside because it is contrary to the laws and public policies of both Florida and Louisiana.

1.  **The Arbitrator Recognized But Then Decided Not To Apply Controlling Florida And Louisiana Law**

The Dolphins and the NFLMC assert that Arbitrator Bloch could not have manifestly disregarded the state laws limiting contractual penalties because he "never accepted" as a "governing principle" that "any obligation to repay advances or incentives in a contract contemplating a long-term relationship must be analyzed as a form of liquidated damages." See Memorandum of Law of Petitioners Miami Dolphins and National Football League Management Council In Opposition To Respondents' Cross-Motion To Vacate the Arbitration Award, dated January 13, 2005 ("PoB"), at 4-5. This argument, however, only underscores the fact that the Arbitrator did recognize the law of liquidated damages but then improperly decided not to apply that controlling law by calling the stipulated damage amounts in the contract "terms that highlight, with precision, those circumstances in which bonus monies will be given and those in which they will be taken away." Opinion In the Matter of the Arbitration Between Miami Dolphins and Ricky Williams, dated October 5, 2004 ("Award"), Ex. C, at 11.[1]

---

[1] References to exhibits are to the exhibits attached to the Memorandum of Law In Support of Respondents' Cross-Motion To Vacate The Arbitration Award, dated December 17, 2004 ("RB").

As reviewed in our brief submitted in opposition to Petitioners' motion to confirm the award, the Award makes it clear that the Arbitrator was fully aware that "[t]he various state law cases do reflect the commonly-accepted principle that <u>a liquidated contract provision must bear some reasonable relationship to the anticipated loss</u>." Award, Ex. C, at 10-11 (emphasis added). Moreover, the Award is also clear that the Arbitrator then deliberately determined not to apply those laws because the financial penalty provisions in the contract -- which were concededly designed to ensure Mr. Williams' non-breach and continued performance under the contract -- were the "essence of the bargain." Id. at 11. As Arbitrator Bloch explained his decision not to apply liquidated damages law:

> In this case, the Miami club had made extensive plans for the Player, attempting to provide both benefits and costs that would <u>ensure a long-term relationship</u>. All this was held for naught when Williams walked away. In response, the Club was entitled to reclaim the bonuses.

Id. at 12 (emphasis added).

This desire to punish Mr. Williams for having "walked away" from the Dolphins, however, provides no basis for the Arbitrator to disregard and refuse to apply applicable liquidated damages law. Arbitrator Bloch knew the applicable law -- that "a liquidated contract provision must bear some reasonable relationship to the anticipated loss." Id. at 11; see RB at 9-11 & cases discussed therein; Respondents' Memorandum Of Law In Opposition To Petitioners' Motion To Confirm Arbitration Award, dated January 13, 2005 ("RoB"), at 4-5. However, Arbitrator Bloch decided not to apply that law because he believed parties to a contract should be able to enforce "default mechanisms" when they are the "essence" of the contract and are designed to "ensure" continued performance -- i.e., to coerce one party to not commit a breach through punitive financial forfeitures. That policy choice had already been made to the contrary by Florida and Louisiana, and it was not within the authority of the Arbitrator to disregard it.

As Arbitrator Bloch knew, the clear laws and public policies of Florida and Louisiana prohibit contractual penalties, whether or not they are the essence of the contract. Arbitrator Bloch, however, made a deliberate decision to disregard and not to apply these laws to the contract penalty clauses in Mr. Williams' player contract. That

decision constitutes a manifest disregard of controlling law, which requires the Court to vacate the Award. See, e.g., National Football League Players Ass'n v. Pro-Football, Inc., 857 F. Supp. 71, 80 (D.D.C. 1994) ("The Court finds that the arbitrator's decision violated the law and public policy of Virginia and therefore cannot stand."), vacated on other grounds as moot, 56 F.3d 1525 (D.C. Cir. 1995), rev'g vacatur & reinstating judgment, 79 F.3d 1215 (D.C. Cir. 1996). An arbitrator may not simply substitute his own view of what type of contractual penalties are permissible for the controlling laws and policies of the states.

2. **The Award Is A Direct Attack On Florida And Louisiana Law Prohibiting Contractual Penalties**

The Dolphins and the NFLMC argue that the Arbitration Award is not contrary to Florida and Louisiana law because "the repayment obligation did not purport to estimate damages; it simply created conditions on which Williams' entitlement to keep certain payments under the Contract hinged." PoB at 6. This claim, however, makes it evident that the Award is a direct violation of the laws of Florida and Louisiana. The Award would destroy those laws and make them illusory because their policy limitations on contractual penalties would never apply so long as the parties to the contract characterized those penalties as "conditional payments." But, as reviewed in our prior briefs, the law is clear that contractual penalty provisions are unenforceable in Florida and Louisiana regardless of the nomenclature that is used to describe them. See RB at 9-15; RoB at 9-10 (discussing Georgia Power Co. v. Int'l Bhd. of Elec. Workers, Local 84, 995 F.2d 1030, 1032 (11th Cir. 1993) (arbitrator's denomination of an award as compensatory does not prevent the court from determining that the award is in fact punitive); Caspert v. Anderson Apartments, Inc., 94 N.Y.S.2d 521, 525 (N.Y. Sup. Ct. 1949) ("Likewise, equity will prevent the enforcement of a forfeiture for nonperformance of conditions subsequent and refuse to give effect to a covenant for liquidated damages if it would be equivalent in substance to a penalty.") (citing Kothe v. R.C. Taylor Trust, 280 U.S. 224 (1930)) (emphasis added); T.A.S. Heavy Equip., Inc. v. Delint, Inc., 532 So. 2d 23, 24-25 (Fla. 4th DCA 1988)).

For example, in T.A.S. Heavy Equipment, the Florida District Court of Appeal concluded that a contract entitling a contractor to payment for only 75% of the

work it had already completed in the event of a breach was an unenforceable penalty because "the language of the termination clause reflects the intent of the parties that a penalty be imposed upon T.A.S. in the event of its breach by not being paid for the full amount of the work actually performed." 532 So. 2d at 25. The Arbitration Award in this case ignored this law by enforcing a similar "conditional payment" that was designed to "ensure" a "long-term relationship" between Mr. Williams and the Dolphins, by providing for a large financial penalty in the event of a default. See Award, Ex. C, at 10-12. Indeed, the Dolphins and the NFLMC concede the coercive nature of these provisions, and the fact that they were not designed to estimate the damages the Dolphins might suffer if Mr. Williams decided not to perform under the contract. They expressly admit that "as Arbitrator Bloch carefully reasoned in his Opinion, the repayment obligation did not purport to estimate damages; it simply created conditions on which Williams' entitlement to keep certain payments under the Contract hinged." PoB at 6 (emphasis added). The Dolphins and the NFLMC further concede that the agreed upon forfeitures were specifically designed to coerce Mr. Williams to perform the entirety of the services due under his contract. Id. (payment of monies depended on whether Mr. Williams would "perform the complete agreement for reasons within his control") (emphasis added).

    The fact that these forfeiture payments are penalties is confirmed by their disproportionate size. As reviewed in our opening brief, the $8.6 million that Mr. Williams has been ordered to pay to the Dolphins is approximately 140% of all of the salary the team has ever paid to Mr. Williams during the two years he has been employed as a star running back by the Dolphins. RB at 1. Moreover, it is approximately 52% of all of the compensation Mr. Williams has been paid in his entire five year NFL career (by both the Dolphins and the Saints). Id. These numbers underscore the highly punitive nature of these payments, as Arbitrator Bloch recognized when he found that they were designed to "ensure" Mr. Williams performance under the contract -- the very definition of a contractual penalty.

    The arguments of the Dolphins and the NFLMC to justify these forfeiture provisions, by claiming that they are immune from liquidated damages limits because they are conditions precedents rather than penalties, elevates wordsmithing over the

substance of these provisions, and would destroy the ability of states like Florida and Louisiana to limit contractual penalties. Parties could avoid the laws and public policy of a state prohibiting contractual penalty clauses simply by stating that all payments under the contract are not fully "earned" until the contract is 100% performed without a breach. For example, under Petitioners' theory, a construction contract could state that all of the payments to be made under the contract are not "earned" until the job is 100% complete, and that if even one brick is left out of the building to be constructed, then the entire contract price must be paid back by the contractor and forfeited, with the other party keeping the benefits of the construction and the construction company receiving nothing in return. The law against contractual penalties is exactly to the contrary. See, e.g., T.A.S. Heavy Equip., Inc., 532 So. 2d at 24-25 (discussed supra pp. 3-4); RB at 9-11 and cases discussed therein.

        The premise of the Arbitration Award, that financial forfeitures are enforceable when they are designed to "ensure" a "long-term relationship" between the contracting parties, turns the state law of liquidated damages clauses on its head. Under this reasoning, parties to a long-term contract could coerce either party from ever pulling out of the contract, regardless of whether such a step would cause any damages at all, by including contractual provisions that make none of the monies paid to each party fully "earned" until the entire term of the contract is completed, and causing the breaching party to forfeit all of the monies ever paid to him or her under the contract in the event of a decision to part ways before the end of the term, rather than to pay the other party the damages, if any, caused by the breach. Enforcing such provisions would directly violate the laws and policy of Florida and Louisiana which prohibit such *in terrorem* contractual penalties.

3. **The Arbitrator Did Not Apply The Acknowledged Law Of Liquidated Damages In The Award**

        Finally, there is no merit to the argument of the Dolphins and the NFLMC that the Arbitrator actually did apply the law of liquidated damages by referring to the draft picks the Dolphins traded to the New Orleans Saints for the right to Mr. Williams' player contract, as indicating that the specified payment was not disproportionate. See

PoB at 9. In the Award, the only mention Arbitrator Bloch made of the draft picks traded by the Dolphins is as follows:

> On its face, the forfeitures here at issue are substantial. <u>So, however, are the tradeoffs by the Club in gaining the Williams contract -- two first round and a fourth round draft choices. Even were one to embrace a liquidated damage approach, it is not at all clear the stakes would be considered disproportionate.</u>

Award, Ex. C, at 11 (emphasis added). This single reference -- which merely states that it was "not at all clear" to the Arbitrator that the stipulated payment "would be considered disproportionate" -- can in no way substitute for the factual findings of proportionality that are required to enforce a liquidated damages provision under Florida and Louisiana law.

Specifically, there was absolutely <u>no</u> evidence in the arbitration record -- and no findings -- concerning the asserted value of the draft picks that the Dolphins traded to the Saints before the 2002 NFL season to acquire the right to Mr. Williams' player contract, the value that Mr. Williams provided to the Dolphins during the two full seasons he played for them after the trade (it is conceded that Mr. Williams played at a high level during those years), or the amount of damages the Dolphins assertedly suffered as a result of Mr. Williams' breach. <u>See</u> RB at 11-12; RoB at 7-8; Hearing Transcript, dated September 21, 2004 ("Hearing Tr."), Ex. E, *passim*. Indeed, the Dolphins and the NFLMC admit that there was no evidence in the record as to any asserted damages the Dolphins claim to have suffered as a result of Mr. Williams' resignation. PoB at 10 ("Arbitrator Bloch said that he would hear the evidence of the Dolphins' actual losses <u>only</u> if he interpreted the repayment provisions to be a penalty and disproportionate . . . .") (emphasis added).

In these circumstances, the Arbitrator was precluded from rendering any Award on the basis of assumed and contested facts when there was no evidence on them in the record. <u>See, e.g., Keiser v. Catholic Diocese of Shreveport, Inc.</u>, 880 So. 2d 230, 236 (La. Ct. App. 2004) (stipulated damages clause unenforceable when no evidence submitted of damages actually suffered); <u>Georgia Power Co. v. Int'l Bhd. of Elec. Workers, Local 84</u>, 825 F. Supp. 1023, 1031 (N.D. Ga. 1992) ("The award is not sustainable as an award of compensatory damages because there was no evidence before

Arbitrator Mathews establishing that the Company's breach of the [CBA] caused employees who did not participate in the Pilot Incentive Pay program to suffer any monetary loss."), aff'd, 995 F.2d 1030, 1032 (11th Cir. 1993) (affirming decision "for the reasons stated" therein); Storer Broad. Co. v. Am. Fed'n of Television & Radio Artists, 600 F.2d 45, 48 (6th Cir. 1979) ("It is apparent that rather than base his award on evidence in the record, the arbitrator 'dispense(d) his own brand of industrial justice.' This he cannot do.") (citation omitted).

Further, the Arbitrator's vague statement that it is "not at all clear" the Award is disproportionate in light of the draft choices the Dolphins traded to the New Orleans Saints does not constitute a finding, as required by Florida and Louisiana law, that the stipulated damages default provisions reasonably approximated the actual or anticipated damages. Both Florida and Louisiana law require the factfinder to make findings based on evidence as to the proportionality and reasonableness of liquidated damages provisions as a policy condition for enforcing them. See, e.g., P&C Thompson Bros. Constr. Co. v. Rowe, 433 So. 2d 1388, 1389 (Fla. 5th DCA 1983) (liquidated damages disproportionate based on evidence that non-breaching party would receive $8,000 windfall if liquidated damages provisions enforced); Philippi v. Viguerie, 606 So. 2d 577, 580 (La. Ct. App. 1992) (stipulated damages provision disproportionate and thus unenforceable based on evidence that stipulated amount of $137,000 far exceeded actual damages of $54,572.16).

There was simply no way for Arbitrator Bloch to apply state law and determine proportionality without record evidence on that point. The Dolphins traded the three draft picks to the Saints in 2002 for the right to Mr. Williams' player contract for the five remaining years in the eight year contract he signed with the Saints when he joined the NFL in 1999 (seven years with a team option for an eighth year). The Dolphins received Mr. Williams' services for the first two of those five years, in 2002 and 2003, when Mr. Williams rendered extremely valuable services to them, including leading the NFL in rushing in 2002. Thus, even if the draft picks the Dolphins gave the Saints could have been taken into account by Arbitrator Bloch in determining proportionality of injury, he could not make any assessment of this issue without receiving evidence on the value of Mr. Williams' services to the Dolphins during nearly

one-half of the contract years they bargained for when they gave up the draft picks. The Arbitrator received no evidence on damages and made none of the findings required by Florida and Louisiana law.[2]

Indeed, the fact that the $8.6 million damages award would have been found to have been vastly disproportionate is evident from the fact that the Dolphins contract provision did not distinguish between the amount of money to be paid by Mr. Williams and the length of time he did not perform under the contract. Instead, the Dolphins contract provided that Mr. Williams would have to pay the Dolphins all of the incentives that he earned for playing for the team whether his default consisted of missing one game or the entire multi-year length of his contract. See RB at 10-11; RoB at 8 n. 3. This is the very essence of a prohibited penalty clause. See RB at 11 and cases discussed therein.[3]

In sum, Arbitrator Bloch's statement that it is "not at all clear" that the Award is disproportionate demonstrates both that the Arbitrator was aware of the governing legal obligations to make factual findings with regard to proportionality, and that he made a decision to disregard that law and issue an Award without the required liquidated damages analysis. For this reason, the Award must be set aside so that a new arbitration hearing can be held to receive relevant evidence and make the necessary findings to evaluate the liquidated damages provisions in Mr. Williams' contracts as required by state law and public policy. See, e.g., Berndt v. Bieberstein, 465 So. 2d 1264, 1266 (Fla. 2d DCA 1985) (case remanded for factual finding of actual damages

---

[2] It would also be improper for the Arbitrator to consider the value of any consideration the Dolphins gave to a third party, the Saints, to acquire the rights to Mr. Williams' contract as a substitute for assessing actual damages incurred by the Dolphins. Under Florida and Louisiana law, liquidated damages provisions are assessed by whether the stipulated forfeiture is proportionate to the value of the damages that a party to the contract may be reasonably anticipated to suffer by the other party's non-performance. It makes no difference how much the Dolphins' traded for Mr. Williams' contract. He was not a party to the trade. The only relevant issue is the amount of damages suffered by the Dolphins by not having Mr. Williams' services for the remaining period of his contract, not how much the Dolphins paid to a third party to receive the right to that contract.

[3] The Dolphins and the NFLMC also admitted at the arbitration hearing that Mr. Williams and the Dolphins never discussed the subject of potential damages in their contract negotiations. See Hearing Tr., Ex. E, at 120-21 ("there was no specific discussions about damages that the Dolphins would suffer from breach").

where liquidated damages provision provided for unreasonable forfeiture of over 55% of paid purchase price).[4]

## CONCLUSION

For all of the foregoing reasons, and all of the reasons set forth in our prior briefs, Mr. Williams and the National Football League Players Association respectfully request that the Award be set aside and the petition to confirm be denied. The Arbitrator manifestly disregarded the governing state law of liquidated damages, and his Award is a direct attack upon the well-established public policy of both Florida and Louisiana prohibiting the enforcement of contractual penalties.

Dated: January 25, 2005

Respectfully submitted,

By: _____
Edward Soto (FBN 265144)
Jon Polenberg (FBN 0653306)
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100
Facsimile: (305) 374-7159
Email: edward.soto@weil.com

Jeffrey L. Kessler, Esq.
David G. Feher, Esq.
Melanie R. Moss, Esq.
DEWEY BALLANTINE LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000

---

[4] The Dolphins and the NFLMC also erroneously claim that Arbitrator Bloch did not decline to receive evidence on the amount of damages the Dolphins would actually suffer from losing Mr. Williams' services. PoB at 9-12. This is not correct, as the transcript of the Arbitration Hearing clearly indicates. Hearing Tr., Ex. E, at 124 ("What I will say on the subject of damages . . . is that if it comes to a point where, for some reason, the remedy is to set aside these provisions and have the parties have recourse to a standard damage approach, I would certainly keep the record open for that point.") (Arbitrator Bloch) (emphasis added). In other words, the Arbitrator refused to receive such evidence before determining whether the stipulated damages clause was enforceable, as required by the governing law.

Richard A. Berthelsen, Esq.
General Counsel
National Football League Players Association
2021 L Street, N.W.
Washington, D.C. 20036
Telephone: (202) 463-2000


Counsel for Williams and
National Football League Players Association

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of Respondents' Reply Memorandum of Law in Support of Motion to Vacate Arbitration Award was served via U.S. Mail on this 25th day of January, 2005 to the individuals listed below.

| | |
|---|---|
| Stanley H. Wakshlag, Esq.<br>Christopher S. Carver, Esq.<br>AKERMAN SENTERFITT<br>One Southeast Third Avenue, 28th Floor<br>Miami, Florida  33131 | Daniel L. Nash, Esq.<br>AKIN GUMP STRAUSS HAUER &<br>FELD LLP<br>Robert S. Strauss Building<br>1333 New Hampshire Avenue, N.W.<br>Washington, D.C.  20036-1564 |

By: _____
            Jon Polenberg