**CLOSED CIVIL CASE**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-61422-CIV-COHN

MIAMI DOLPHINS LTD. and NATIONAL
FOOTBALL LEAGUE MANAGEMENT COUNCIL,

    Petitioners,

vs.

ERRICK L. "RICKY" WILLIAMS and NATIONAL
FOOTBALL LEAGUE PLAYERS ASSOCIATION,

    Respondents.
_____/



FILED by _____ D.C.

FEB 15 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD

## ORDER GRANTING MOTION TO CONFIRM AWARD
## ORDER DENYING MOTION TO VACATE AWARD

This cause is before the Court upon Petitioners Miami Dolphins and National Football League Management Council's' Motion for Confirmation of Arbitration Award [DE 15] and Respondents Errick L. Williams and National Football League Players Association's Cross-Motion to Vacate Arbitration Award [DE 14]. The Court has carefully considered the motions, responses and replies thereto, has heard the argument of counsel at a hearing held on February 11, 2005, and is otherwise fully advised in the matter.

### I. BACKGROUND

Errick L. "Ricky" Williams ("Williams") played football for the Miami Dolphins pursuant to a contract containing various compensation provisions involving a signing bonus and incentive bonuses. Before the 2002 season, Miami traded three draft picks to the New Orleans Saints to obtain Williams. The Dolphins and Williams negotiated a new contract including various incentive bonuses available to Williams based on his performance in each season for the remainder of the term of the original contract. The

Dolphins Contract also specifically incorporated (and attached) the Additional Consideration Signing Bonus provisions that were part of Williams' contract with New Orleans.

In late July, 2004, Williams informed the Dolphins that he would no longer play football. The Dolphins then filed a grievance under the collective bargaining agreement in place between the football player's union, the National Football League Player's Association ("NFLPA") and the owner's association, the National Football League Management Council ("NFL"). The grievance was based upon several clauses in the Contract between the Dolphins and Williams. One relevant clause states:

> Upon Player's failure to perform for the above enumerated reasons under Player's contracts for the [1999-2006][1] seasons, Player shall forfeit all future payments and amounts not yet received, and shall immediately return and refund to the Club any of the Additional Consideration previously paid by Club in the proportionate amount of the Additional Consideration as follows: . . . K. Voluntary Breach of Failure to Perform after January 31, 2004, and before or during the 8th game of the 2004 regular season: 37.50% ($3,316,343)

Additional Consideration Signing Bonus, filed as Joint Exhibit 4 to Pre-Hearing Brief of the Miami Dolphins, Tab C to Motion of Petitioners for Confirmation of Arbitration Award [DE 15] (hereinafter, "Pre-Hearing Brief").

With regard to performance incentive bonus payments, the Contract states in ¶¶ 12 - 12.6 that:

> In the event Player fails or refuses to report to Club, or fails or refuses to practice or play with Club at any time for any reason. . . , or leaves Club without its consent during the duration of the above league years, or if Player is otherwise in breach of this Contract, then Player shall be in

---

[1] 2006 is labeled as an "option year."

> default ("Default").[2]  If Player is in Default, then upon demand by Club, Player shall. . . return and refund to the Club any and all incentive payments previously paid by Club. . . relinquish and forfeit any and all earned but unpaid incentives.

Addendum 1 to NFL Player Contract, filed as Joint Exhibit 4 to Pre-Hearing Brief.

On August 19, 2004, the Dolphins notified Williams of the Default and demanded payment of $8,616,343.00 in forfeited bonus payments. Club Exhibit 3 to Pre-Hearing Brief. The Dolphins then filed a grievance against Williams pursuant to the NFL Collective Bargaining Agreement ("CBA") on September 1, 2004. Joint Exhibit 2 to Pre-Hearing Brief. The grievance was heard by an arbitrator pursuant to the CBA on September 21, 2004. On September 24, 2004, the arbitrator notified the parties that his decision was to grant the Dolphins' grievance. Tab A to Pre-Hearing Brief. A twelve-page written opinion was entered by the arbitrator on October 5, 2004. Tab B to Pre-Hearing Brief. On October 28, 2004, the Dolphins filed this action to confirm the arbitration award pursuant to the Federal Arbitration Act. Williams subsequently filed a motion to vacate the award. The parties completed briefing these motions on January 25, 2005. The Court then granted Williams' January 28, 2005 request to hold a hearing on the motions.

## II. DISCUSSION

The provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. ("FAA"), control this Court's review of an arbitration award, whether presented by a motion to confirm or a motion to vacate. It is well-settled that the Federal Arbitration Act was

---

[2] The final section of ¶ 12 states that a football related injury or termination from the Club based upon skill or football related injury does not constitute a "Default."

intended to relieve congestion in the courts and provide the parties with an alternative method for dispute resolution that would be quicker and less expensive than litigation. See O.R. Sec., Inc. v. Professional Planning Assocs., Inc., 857 F.2d 742, 745 (11th Cir. 1988). Judicial review of arbitration awards is "narrowly limited," and the FAA presumes that arbitration awards will be confirmed. See, e.g., Gianelli Money Purchase Plan & Trust v. ADM Investor Servs., Inc., 146 F.3d 1309, 1312 (11th Cir. 1998); Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1188 (11th Cir.1995). Great deference is afforded to arbitration awards. See O.R. Sec., Inc., 857 F.2d at 746.

This deference is even greater in the context of collective bargaining agreements and labor-management disputes. The United States Supreme Court has stated that:

> Judicial review of a labor-arbitration decision pursuant to such an agreement is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement. *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). We recently reiterated that if an " 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.' " *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (quoting *Misco, supra,* at 38, 108 S.Ct. 364). It is only when the arbitrator strays from interpretation and application of the agreement and effectively "dispense [s] his own brand of industrial justice" that his decision may be unenforceable.

Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (U.S. 2001).

The Eleventh Circuit has long followed this standard:

> Courts are not to vacate the award because of substantive mistake except in rare instances of egregious error, such as when the award is irrational, when it fails to draw its essence from the collective bargaining agreement, or when the arbitrator has exceeded a specific contractual limitation on the scope of his authority. Although such extreme deference has its costs in the particular case, those costs are far outweighed by the general

>benefits that accrue to the national labor scheme from giving arbitral awards a strong presumption of finality.

Wallace v. Civil Aeronautics Bd., 755 F.2d 861, 863 -864 (11th Cir. 1985).

In applying this standard of review, the FAA sets forth four grounds for vacating an arbitration award:

>(1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing when there was good cause to postpone, or in refusing to hear pertinent and material evidence, or were guilty of any other misbehavior which may have prejudiced any party; or (4) the arbitrators exceeded their powers so much so that a mutual, final, and definite award upon the subject matter submitted was not made.

See 9 U.S.C. § 10(a). The burden is on the party requesting vacatur of the award to prove one of these four bases. Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1289 (11th Cir. 2002).

In addition to the four statutory grounds, none of which are applicable in the present case, the Eleventh Circuit Court of Appeals has recognized three non-statutory bases for vacatur of an arbitration award. The award may be vacated (1) if it is arbitrary and capricious, (2) if its enforcement is contrary to public policy, or (3) if it evinces a manifest disregard for the law. Montes v. Shearson Lehman Bros., Inc., 128 F.3d 1456, 1458-59, 1461-62 (11th Cir. 1997). In adding the "manifest disregard for the law" basis in Montes, the Eleventh Circuit emphasized "that this ground is a narrow one. We apply it here because . . . the arbitrators recognized that they were told to disregard the law (which the record reflects they knew) in a case in which the evidence to support the award was marginal." Montes, 128 F.3d at 1462 (11th Cir. 1997).

Williams argues that the award must be vacated because it manifestly

5

disregards state law regarding liquidated damages that are unenforceable penalty provisions with no relation to actual damages. Williams also asserts that the award must be vacated because enforcement of the liquidated damages provisions violates the public policy of Louisiana and Florida.

### A. Arbitrator's Decision

In the arbitration, the Dolphins argued that the plain language of the default provisions in the player contract is clear that Williams must refund the bonuses paid to him. Williams argued that such provisions are liquidated damages bearing no relationship to the extent of the loss suffered by the Dolphins as a result of Williams' decision to retire. The arbitrator then reviewed the contract provisions at issue. The arbitrator clearly considered the state-law argument regarding liquidated damages presented by Williams. See Decision at 10-11, Tab B to Pre-Hearing Brief. He concluded that whether or not the default provisions constituted a penalty, "what was bargained here was a comprehensive incentive and default mechanism." Id. at 11.

### B. Manifest Disregard for the Law

Williams argues that the default provisions are intended to punish him for failing to perform under the contract in violation of the state law of Florida and Louisiana. This Court concludes that if necessary, only Florida law applies, as Louisiana law does not appear to apply to the Dolphins-Williams Contract. The Contract specifically states that it is governed by Florida law, and that the Contract, including any attachments, sets for the entire agreement. ¶¶ 21-22 of standard Player Contract, Joint Exhibit 4 to Pre-Hearing brief. Thus, the initial Saints contract specifically does not apply, except for the Additional Consideration Signing Bonus provisions, which where specifically made part

6

of the Dolphins-Williams Contract, and which do not reference Louisiana law. Id., ¶ 1 of Addendum.

Williams further argues that the arbitrator's decision was in manifest disregard of such state law, relying upon Montes, 128 F.3d at 1461 (quoted above). However, in this case, the Dolphins argued in the arbitration that state law forbidding such penalty provisions did not apply as a legal matter. That is not the same as urging the arbitrator to "manifestly disregard" state law, as the Court of Appeals found to have occurred in Montes. Rather, such argument and decision that the anti-penalty , even if wrong, at worst is a "misinterpretation, misstatement or misapplication of the law," which cannot constitute a basis to vacate an award. Montes, 128 F.3d at 1461-62.

### C. Public Policy Violation

In a closely related argument, Williams asserts that the arbitrator's decision violates public policy, relying heavily upon a decision involving the NFLPA and the NFL out of the District of Columbia. In National Football League Players Ass'n v. Pro-Football, Inc., 857 F.Supp. 71, 75 (D.D.C. 1994), the NFL succeeded in having the court vacate an arbitration award against the Washington Redskins. The issue in that case involved the payment of union dues or union service fee by certain players. The CBA provided that players who have failed to pay the dues by a certain time are to be suspended by their team. In this case, the team refused to suspend the players, arguing that as a Virginia-based company, Virginia law forbids employers to enforce such a "closed-shop" labor provision. The NFLPA filed a grievance. An arbitrator concluded that the job situs was in the District of Columbia, and granted the union's grievance.

The court, in deciding to vacate the arbitration award, stated that "[d]ecisions of arbitrators are given deference even if the arbitrator makes errors of fact and law, unless the arbitrator's award 'compels the violation of law or conduct contrary to accepted public policy,'" citing to authority from the Circuit Court of Appeals for the District of Columbia. The district court reasoned that: "The only reasonable way to determine the amount of deference to give to the arbitrator is to review the merits of the arbitrator's decision to determine whether he made an error of law that compels the defendants to violate Virginia law and public policy." 857 F.Supp. at 76. After reviewing the merits of the decision regarding job situs, the Court concluded that the correct legal decision was that the job situs was Virginia, and therefore vacated the arbitration award.

In attempting to distinguish this case, the Dolphins argued that confirming the arbitration award in the present case would not require Williams to violate public policy. Although not mentioned by either party at the hearing, it appears that the Redskins decision was vacated on appeal as being moot. National Football League Players Ass'n v. Pro Football, Inc., 56 F.3d 1525, 1526 (D.C. Cir.1995) ("we decline to reach the merits of this appeal and vacate the District Court's judgment and order"). The Court therefore declines to follow this decision.

The public policy argument of Williams has some merit. It is true that under Florida law, agreements between parties to apply liquidated damages upon default can be deemed unenforceable as penalty provisions by a court. See Coleman v. B.R. Chamberlain & Sons, Inc., 766 So.2d 427, 429 (Fla. Dist. Ct. App. 2000); T.A.S. Heavy Equipment, Inc. v. Delint, Inc., 532 So.2d 23, 25 (Fla. Dist. Ct. App. 1988). This Court

8

recognizes that the default provisions of the Dolphins-Williams contract could be construed as valid liquidated damages or as an unenforceable penalty. However, the Court finds that the arbitrator in this case was well within the scope of his authority in interpreting the default provisions of the contract in the context of the NFL's CBA and Florida law.[3] The fact that the arbitrator construed the contract in a manner that avoided consideration of whether the actual damages were proportional to the default provisions does not render his decision in manifest disregard or against the public policy of Florida.[4]

## III. CONCLUSION

The Court therefore concludes that Williams and the NFLPA have not met their burden to vacate the arbitration award. They failed to establish that the arbitrator manifestly disregarded the law, or that enforcement of the award would violate public

---

[3] On the issue of whether the default provisions are valid liquidated damages or an unenforceable penalty, the Dolphins argue that under H.D. Hutchison v. Tompkins, 259 So.2d 129, 132 (Fla. 1972), the fact that its damages from Williams' breach were not readily ascertainable at the time the contract was signed allows the liquidated damages clause to be valid. This Court does agree that given the personal nature of the services in question, those of a starting running back in the NFL, it would be difficult if not impossible in 2002 for the parties to ascertain what the damages to the Dolphins would be if Williams breached the agreement in July, 2004.

[4] Williams argues that the failure of the arbitrator to take evidence on the issue of the casual relationship of the damages necessitates remand under Georgia Power Co. v. IBEW, 995 F.2d 1030 (11th Cir. 1993) (after stating deferential standard for arbitrators in labor disputes, court concluded damages were punitive given no casual relationship between violation and alleged damage). Although he concluded that the default provisions were not penalty provisions, the arbitrator alluded to an alternative holding that the Dolphins suffered substantial damages in the form of the lost draft picks traded to the Saints to obtain Williams. No evidence was presented on this issue, and it is not clear whether such value is inherent and/or within arbitrator's knowledge of "law of the shop."

9

policy, or that the award is arbitrary and capricious. The Court will therefore deny their motion to vacate and grant the Petitioners' motion to confirm the award.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioners Miami Dolphins and National Football League Management Council's Motion for Confirmation of Arbitration Award [DE 15] is hereby **GRANTED**;

2. Respondents Errick L. Williams and National Football League Players Association's Cross-Motion to Vacate Arbitration Award [DE 14] is hereby **DENIED**;

3. The Clerk shall close this case and deny any other pending motions as moot;

4. The Dolphins shall file and serve a proposed final judgment no later than February 22, 2005.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 15th day of February, 2005.

_____
JAMES I. COHN
United States District Judge

copies to:

Stanley Wakslag, Esq./Chris Carver, Esq.
Daniel Nash, Esq.
Edward Soto, Esq./Christopher Page, Esq.
Jeffrey Kessler, Esq./Melanie Moss, Esq.